Judgment reversed.

| 114 | 603 |
|---|---|
| d 22 SC | ¹596 |

# Kaut & Reineman *versus* Kessler & Schlather.

1. Any words spoken, or any acts done, by a client in the presence of his attorney and in the course of his employment, are privileged, and may not be proved by the testimony of the attorney without the consent of the client.

2. An agreement by which one places his personal property in the hands of another without any obligation of sale on part of the one, or the right of purchase at any time in the other, is not a conditional sale but a bailment.

November 6th, 1886. Before GORDON, PAXSON, TRUNKEY, STERRETT, GREEN and CLARK, JJ. MERCUR, C. J., absent.

ERROR to the Court of Common Pleas, No. 1, of *Allegheny county :* Of October Term 1886, No. 181.

This was a feigned issue wherein James Kessler and Leonard Schlather were plaintiffs, and Jacob Kaut and E. A. Reineman partners, as Kaut & Reineman were defendants.

On the 11th day of March, 1882, Kaut & Reineman, the defendants, obtained a judgment against one G. W. Bartheld in the Court of Common Pleas, No. 1, for $1,025.96, and on the 29th day of July, 1884, issued a pluries writ of *fieri facias* on their judgment, by virtue whereof the sheriff, on the 26th day of August, 1884, levied on all the personal property in the

[Kaut et al. *v.* Kessler et al.]

Penn Incline Resort in the possession of Bartheld, consisting of wines, liquors, bar-room fixtures and furniture, household goods, and leasehold of premises.

Kessler & Schlather, the defendants in error, gave the sheriff notice that the goods levied on belonged to them, whereupon the sheriff took a rule on the parties to interplead, which rule was made absolute, and an issue was formed to try the title to the goods. On the trial before BAILEY, J., the following facts appeared :—

The Penn Incline Resort is a large brick building used as a saloon and place of public entertainment, located on the bluff at the head of the Penn Incline, just east of Union station in the city of Pittsburgh. It belongs to the Penn Incline Company, and on the        day of March, 1884, the company leased it to Bartheld, the defendant in the execution, for one year, with the privilege of an extension for two years, at a yearly rent of $3,000, and Kessler & Schlather, the claimants, became sureties for Bartheld for the payment of the rent. At the same time Bartheld assigned the lease to them.

The building was new—had never been occupied—and before Bartheld could commence business it was necessary to fit it up and furnish it. For the purpose of fitting up and furnishing the house Kessler & Schlather and Bartheld entered into the following agreement:

Articles of agreement made and concluded and entered into this twenty-fourth (24th) day of March, A. D. 1884, between John Kessler, Sr., of the city of Pittsburgh, Pennsylvania, and Leonhard Schlather, of Cleveland, Ohio, parties of the first part, and George W. Bartheld, of the city of Pittsburgh, aforesaid, party of the second part.

It is agreed and understood between the parties hereto that the said George W. Bartheld will, on the first day of May, 1884, commence, undertake and carry on the restaurant and liquor business, occupying the first floor and basement in the depot and office building of the Seventeenth (17th) Street Incline Plane Company, located upon the hill terminus of the same, in the Tenth ward, city of Pittsburgh, aforesaid.

The said George W. Bartheld having no capital whatever contributes therefore nothing into said business, and agrees to carry on said business solely under the name of and style of " George W. Bartheld, Agent."

The said John Kessler, Sr., and Leonhard Schlather, in consideration of the management of said business as aforesaid by said Geo. W. Bartheld, hereby agree to expend the sum of three thousand dollars ($3,000.00) in the general preparation and furnishment of said place of business, with all the necessary bar fixtures, restaurant fixtures, stock, and the entire nec-

essary articles and implements for the proper carrying on of the same. All of which said bar and restaurant furnishment, etc., the said George W. Bartheld positively agrees shall be and is the sole property and belonging of the said John Kessler, Sr., and Leonhard Schlather.

The said George W. Bartheld agrees to purchase all the beer necessary for said business from said John Kessler and L. Schlather, and is to pay him the sum of ten dollars ($10.00) per barrel.

The said George W. Bartheld agrees further to pay all the rent of said place of business; also all water rents and taxes appertaining thereto, and also all gas bills.

This contract the said parties hereto agree to fulfill and carry out as per the terms thereof, and the said contract, it is also agreed, shall expire in three years from the first day of May, A. D. 1884, to wit, until May 1st, 1887.

Witness our hands and seals this 24th day of March, 1884.

JOHN KESSLER,        [Seal.]
L. SCHLATHER,        [Seal.]
G. W. BARTHELD, [Seal.]

Attested, signed, sealed, in the presence of Joseph M. Friedman as 'to Kessler and Bartheld.

Bartheld gave Kessler & Schlather a judgment note for $3,000. There was a conflict of testimony as to whether this was given as security for rent or in payment of the fixtures and furniture.

It was verbally agreed that the ten dollars per barrel for beer which Bartheld agreed to pay was two dollars per barrel in excess of the market price, and that this excess of two dollars per barrel on beer, as paid by Bartheld, was to be credited on the judgment note given by him.

For the stock of liquors, costing $749, and $100 in cash furnished him, Bartheld gave Kessler his note for $850. Bartheld also expended about $1,100 of his own money in fitting up the Resort.

Bartheld opened the Resort on the 26th of May, and during the summer and fall of 1884 he did a large business. He conducted the business partly under the name of the Penn Incline Resort, and partly under the name of G. W. Bartheld, agent. Schlather opened a beer account with Bartheld and charged all the beer delivered at the Resort to him at the rate of ten dollars per barrel, and received from him $4,000, which entitled Bartheld to a credit of $800 on the judgment note of $3,000. Bartheld did not agree to pay anything to Kessler & Schlather for the use of the goods, and did not pay anything, and there was no stipulation that the goods should be returned.

Kaut & Reineman's levy was made the 26th of August,

1884, and Kessler & Schlather immediately came in and claimed the goods, and Bartheld filed an affidavit in support of their claim, and went on with his business as usual.

In December, 1884, Kessler and Schlather entered judgment against Bartheld on the judgment note for $3,000, issued execution and levied on all the goods at the Resort which they did not claim under the previous execution. By virtue of this levy the sheriff took possession of the Resort, and turned it over to Kessler & Schlather.

During the trial, J. M. Friedman, Esq., who wrote the agreement between Kessler & Schlather and Bartheld, and who was the subscribing witness thereto, was called as a witness by the defendants. The defendants proposed to prove by him that portion of the agreement which was not in writing, and also all the circumstances attending the making of the agreement and the giving of the judgment note, for the purpose of showing that the arrangement was a mere advance of money to Bartheld to set him up in business; that the goods were actually purchased by him and belonged to him, and that the agreement was resorted to as a device to prevent Bartheld's creditors, especially Kaut & Reineman, levying on the goods.

The following is the offer as made:

Defendants propose to prove that Mr. Bartheld and Mr. Kessler made this arrangement for the purpose of setting Bartheld up in business, and that the papers were put in this shape for the purpose of preventing the creditors of Mr. Bartheld, particularly Kaut & Reineman, the defendants, from levying upon the property that was about to be bought with plaintiffs' money to set Bartheld up in business; that Bartheld actually bought the property, and these parties (the plaintiffs) simply agreed to lend him so much money to carry on business, which was to be repaid at the rate of $2 a barrel on beer; propose to prove the conversation between Kessler and Bartheld at the time of the execution of the agreement and judgment note.

Objected to because the proposed testimony relates to matters communicated to the witness in his professional capacity; and is therefore incompetent. Objection sustained. (First assignment of error.)

The plaintiff presented *inter alia* the following points:

2. That if the jury believe, under all the evidence, that the understanding and agreement between Kessler & Schlather and Bartheld as to the property in question was—that Kessler & Schlather would buy the property with their own money and deliver it into the possession of Bartheld for his use, and would at a future time, sell and transfer it to Bartheld, if, during the time he had such use, he, the said Bartheld, had

paid them such sum or sums of money as would equal the value of said property and its interest, then the verdict must be for the plaintiffs.

Answer—I affirm that point. If you find that Kessler & Schlather were to buy this property and deliver it to Bartheld, to be used by him, and at a future time sell and transfer to Bartheld if he (Bartheld) within that time should repay to them an amount equal to the value of the property, that is what in law is called a bailment, and not a conditional sale. (Second assignment of error.)

3. If, under all the evidence, the jury believe that Bartheld was, after receiving the possession of the goods in controversy, to retain them for a definite period, to become the absolute owner if at or before the expiration of the period he paid for them, otherwise to pay for their use, then the transaction is but a bailment, and the title remains in Kessler & Schlather.

Answer—Affirmed.   (Third assignment of error.)

The defendants presented *inter alia*, the following points:

1. That under all of the evidence the verdict should be for the defendants.

Answer—Refused.   (Fourth assignment of error.)

4. That if the jury find from the evidence that the plaintiffs purchased the goods claimed by them to set Bartheld up in the business of keeping the Penn Incline Resort, under an agreement between the plaintiffs and Bartheld, that said Bartheld was to pay for said goods by the payment of $2 extra on each barrel of beer purchased by him, and that the plaintiffs took a judgment note from Bartheld either in payment of said goods or as security, either in whole or in part, for such payment, upon which note they entered judgment and issued execution and received from Bartheld the sum of $800 on account of said goods, and that said goods were delivered to said Bartheld under said agreement, and were in his actual possession and use at the time of the levy by the sheriff, the verdict should be for the defendants.

Answer—Refused.   (Fifth assignment of error.)

In the general charge the court instructed the jury *inter alia* as follows:

I can instruct you probably in all that is necessary by recalling to your recollection the second point of the plaintiffs: "That if the jury believe under all of the evidence the understanding and agreement between Kessler & Schlather and Bartheld as to the property in question was, that Kessler & Schlather would buy the property with their own money and deliver it into the possession of Bartheld for his use, and would at a future time sell and transfer it to Bartheld, if, during the time, he had such use, he, the said Bartheld, had paid them

such sum or sums of money as would equal the value of said property and its interest, then the verdict must be for the plaintiffs." That point I have already affirmed, and that is the law governing this case, if you find the facts as set forth herein, and of course that is the inquiry which you will determine under the light of the evidence. It will be your duty to determine what this collateral agreement as to the extra $2 a barrel for beer was, and how it was to be applied, and whether if, within the three years he would pay the $3,000 by the $2 a barrel extra for beer, he would have the property. If you find the facts as stated in this point, your verdict will be for the plaintiffs, otherwise for the defendants. (Sixth assignment of error.)

*Levi Bird Duff* (*L. B. D. Reese* with him), for plaintiffs in error.—All facts within the knowledge of an attorney are not protected from disclosure as privileged communications. It may happen, also, that the information communicated belongs to ordinary, as distinguished from professional, intercourse, and if this be clearly the case no professional privileges will shield it from disclosure : Wharton's Law of Evidence, sec. 589. The privilege does not extend to every fact which the attorney may learn in the course of his employment. There is a difference in principle between communications made by the client and acts done by him in the presence of his attorney : Daniels Chan. Prac., vol. 1, 943–44 and note 1 ; Coveny *v.* Tannehill, 1 Hill (N. Y.), 33.

The facts of this case bring it clearly within the ruling in Stadtfeld *v.* Huntsman, 92 Pa. St., 53 ; Brunswick and Balke Co. *v.* Hoover, 95 Id., 508 ; Boynton *v.* Isaacs, 10 W. N. C., 190.

The case of Edwards' App., 105 Pa. St., 103, is relied on to sustain the ruling of the court in this case, but that case was ruled expressly upon the ground that the furniture, which was the subject of controversy, was delivered to the defendant in the execution under a lease of the hotel and furniture. In this case the goods were delivered to Bartheld under no other arrangement than an agreement to pay for them—the title was reserved to Kessler & Schlather only for the purpose of securing payment.

*John S. Ferguson* (*A. H. Rowand, Jr.*, with him), for defendant in error.—Was the court below right in rejecting the testimony of Mr. Friedman? He was manifestly called upon the assumption that Bartheld and Kessler at the time they employed him to draw their agreement disclosed to him a purpose different from that expressed in the agreement. He certainly

acted as attorney for Kessler & Schlather and Bartheld and
this controversy does not arise between them. Bartheld is
not seeking to use him as a witness, but Kaut and Reineman,
who are third parties, are. If a question arose between Kess-
ler & Schlather on the one hand and Bartheld on the other,
which required a disclosure of what took place in the presence
of Mr. Friedman, we do not doubt that in that event either
party to the controversy would have a right to call him as a
witness, but that is not this case. Here he is called to disclose
the communications of these clients for the benefit of persons
who are alleging that they have been injuriously affected by
the transaction about which Mr. Friedman was consulted, and
who claim that if he is permitted to disclose those communi-
cations they will be able to avoid the injury: Coveny v. Tan-
nehill, 1 Hill, 33, does not decide what is claimed by the
plaintiff in error.

If it was an executory contract of sale, then no title passed
to Bartheld until delivery to him with intent to pass the title
or performance of the contract on Bartheld's part: Houser v.
Kemp, 3 Pa. St., 208 ; Lester v. McDowell, 18 Id., 91; Snea-
then v. Grubbs, 88 Id., 147.

If the transaction is regarded as a conditional sale, then the
rule invoked by the plaintiffs in error does not apply, for such
rule has no application where the vendor retains either an ex-
clusive or joint possession with the *indicia* of ownership: Le-
high Co. v. Field, 8 W. & S., 232; Rose v. Story, 1 Pa. St.,
190.

If it was a loan of personal property subject to be turned
into a sale by compliance with certain conditions, the title
would not be transferred so as to subject the property to levy
and sale for a debt of the bailee: Clark v. Jack, 7 Watts, 375 ;
Henry v. Patterson, 67 Pa. St., 346.

We submit that the law will not be astute to punish men
for brotherly kindness and generosity, and that this court will
find abundant authority to sustain the judgment in this case in
its own ruling in Edwards' Appeal, 105 Pa. St., 103.

Mr. Justice GREEN delivered the opinion of the Court,
January 3d, 1887.

The preliminary examination of the witness Friedman dis-
closed the fact that he had been employed by Kessler, one of
the plaintiffs, as counsel, to prepare the contract between the
plaintiffs and Bartheld. He testified to the fact of the em-
ployment and the preparation and execution of the contract
and judgment note, to the payment by Kessler for his profes-
sional services and as to who was present at the time of
execution. The defendants, who were no parties to that

4 AMERMAN—39

transaction, then offered to prove by the witness, all that took place between his client Kessler and Bartheld at the time the papers were prepared and executed. Practically it was an offer to prove that the client had made a parol agreement with Bartheld different from the terms of the written agreement. As this was matter in parol it is a necessary consequence that the knowledge of the counsel was acquired in the course of his professional employment, and by the direct verbal utterances of his client. The party who offers this evidence, is not the other party to the contract, but a stranger who had no connection with it. To us it is perfectly clear that any words spoken, or any acts done, by the client, in such circumstances, in the presence of his attorney and in the course of his employment are privileged, and may not be proved by the testimony of the attorney without the consent of the client. We think the offer of testimony was properly rejected.

In regard to the other assignments of error in relation to the character and effect of the contract, as ruled by the court below, we are equally clear there was no error. It must be borne in mind that the property in question never was the property of Bartheld at any time before the contract was made. It was not purchased by him nor paid for with his money. On the contrary the undisputed testimony is that the property was furnished by Kessler & Schlather, who procured it from other persons and paid for it with their own money. This being so the title would be conclusively in them unless it was divested by the operation of the contract between them and Bartheld, or by some matter *in pais* which clothed the transaction with a quality of fraud upon creditors. The latter of these subjects was duly committed to the jury by the court with proper instructions to the effect that if there was an intent on the part of Kessler & Schlather to sell the property to Bartheld for $3,000 and wait on him for the payment of the money, then the title would pass to Bartheld and his creditors could seize it. The verdict of the jury disposes of this part of the case of the defendants because it finds the facts against them. As to the effect of the written contract itself it is not possible in our judgment to regard it as a sale in any view that can be taken of it. By the first clause Bartheld agrees to commence and carry on a liquor and restaurant business upon certain premises named. The second clause recites that as Bartheld has no capital he contributes nothing to the business, and agrees to carry it on in the name and style of " George W. Bartheld, agent." By the third clause Kessler & Schlather agree, in consideration of Barthold's service, to expend $3,000 in fitting up and furnishing the place with all necessary fixtures and stock, and Bartheld " positively agrees " that all the

property belongs to them.    In the next clause Bartheld agrees
to purchase beer necessary for the business from Kessler &
Schlather at $10 per barrel, and he agrees, in the next clause
to pay all rents, taxes and gas bills.    The contract closes with
a stipulation limiting its operation to three years.    In all this.
there is not a provision, not a word looking to the acquisition
of title by Bartheld to the property in question at any time or
in any manner.    The title which is already in Kessler & Schla-
ther remains in them, and cannot be divested by the execution
of any of the terms of the contract.    Both in form and in sub-
stance the contract is nothing but a bailment.    The cases cited
for the plaintiffs in error have no analogy to this because they
all contained provisions by which a passage of the title was
provided for, but here there is nothing of the kind.    We can
not possibly say that this instrument shall have the character
and effect of a sale when there is no part of it which can in
any event give a right of purchase, or impose an obligation of
sale.    We think the learned court below presented the case
with entire correctness and fairness to the jury, and that there
was no error in the charge or answers to points.    The giving
of the $3,000 judgment, and the price of the beer were matters
growing out of the oral testimony, and were for the jury.

Judgment affirmed.