## Thomas *v.* Herring, Appellant.

*Equity—Deeds—Cancellation—Fraud — Equity pleading — Responsive answer—Two witness rule—Corroborating circumstances —Evidence—Witnesses—Attorneys—Confidential communications.*

1. In a suit in equity for the cancellation of a deed alleged to have been procured from plaintiff by fraud, where the deed which conveyed certain real estate to defendant contained a covenant on the part of the grantee to pay plaintiff's debts, "furnish her free of charge, with good and sufficient meat, drink, victuals," etc., and there was evidence tending to show that at the time of the execution of the deed, plaintiff was a physically and mentally infirm and weak old woman, that she had had trouble with a tenant and had put the property in defendant's name so that the tenant could be ejected more easily, that in so far as plaintiff was aware of the transfer of her property, she believed it but a temporary and revocable arrangement, that plaintiff did not know that a covenant for her support had been inserted in the deed, that she could not read or write and that the deed had not been read or explained to her before she executed it, the inference is properly drawn that the plaintiff lacked mental capacity to appreciate the business in hand at the time of the transfer of the property and did not comprehend the nature and consequence of her act, and that the deed as drawn did not represent the intention of the parties.

2. Where in such case the answer denied the material averments

of the bill, and alleged that plaintiff had executed the deed with full knowledge of what she was doing, and plaintiff was the only witness in support of her contention, but it was not disputed that despite the terms of the grant, plaintiff was permitted to receive the rents of the property, and from defendants' testimony, it appeared that plaintiff's consent was asked when the property was mortgaged by defendants, shortly after the conveyance and from the testimony of both parties it was clear that the covenants for support had no proper place in the deed, these constituted corroborating circumstances sufficient to satisfy the rule, applicable to the reformation or cancellation of a written instrument, that the responsive averments of an answer under oath can only be overcome by two witnesses or by one witness and corroborating circumstances.

3. Where in such case it appeared at the hearing that one of defendants' attorneys had acted as counsel for plaintiff at the time of the execution of the deed, and had accepted a fee from plaintiff and that such attorney was thereupon required by the chancellor to withdraw from the case, it was not error to refuse to allow such attorney to testify for defendants to conversations had with plaintiff while he was acting as her counsel.

*Equity practice—Exceptions—Hearing by court in banc—Argument on exceptions—Equity rule 66—Appeals—Harmless error.*

4. Where in a proceeding in equity for the cancellation of a deed it appeared that the exceptions to the findings of fact and law of the chancellor were argued before the chancellor alone, and that the final decree was entered, without argument having been heard by the other judges, in alleged violation of equity rule 66; but where no exception to the practice was taken in the court below and the defendants suffered no material harm therefrom they have no standing to complain thereof in the Supreme Court. Proper equity practice under rule 66 defined.

Argued Feb. 17, 1914. Appeal, No. 283, Jan. T., 1913, by defendant, from, decree of C. P. Schuylkill Co., May T., 1912, No. 1, in Equity, for plaintiff, on bill in equity for the cancellation of a deed, in case of Margaret A. Thomas v. Sarah Ann Herring. Before Brown, Mestrezat, Potter, Elkin and Moschzisker, JJ. Affirmed.

Bill in equity for the cancellation of a deed. Before Brumm, J.

The opinion of the Supreme Court states the facts.

The court, on final hearing, granted the relief prayed for.   Defendants appealed.

*Errors assigned* were in dismissing exceptions to various rulings on evidence, to various findings of fact and law, and the decree of the court.

*W. F. Lyons,* and *Edmund D. Smith,* for appellant.

*M. M. Burke,* with him *P. H. Burke,* for appellees.

OPINION BY MR. JUSTICE MOSCHZISKER, March 30, 1914:

The plaintiff, a widow with two children, a son and daughter, owned certain real estate in the Borough of Shenandoah, Pennsylvania, worth about $7,000.   In 1910 she conveyed this property to her daughter, the defendant.   The consideration named was "natural love and affection and the sum of $1.00," but no value whatever was paid.   The deed reserved to the grantor the right to use and occupy the rear part of one house, and contained the following covenant on the part of the grantee: "The said Sarah Anna Herring, for the benefit of her personal estate and for the improvement and enlargement thereof and for the acquirement of the premises herein described as her separate estate, and in consideration of the premises......hereby covenants, grants and agrees to and with the said Margaret Thomas, that she, said Sarah Ann Herring, will during the life of Margaret Thomas, pay her debts, furnish her, free of charge, with good and sufficient meat, drink, victuals, and also washing and ironing of every description, clothing and shoes, medical attendance and a servant girl if need be in case of illness, and in all and every respect provide and care for her in a comfortable and decent manner......and give her a decent Christian burial after death"; it likewise contained a similar cove-

nant by the husband of the grantee, which recites that it was made "in consideration of the premises and the benefit that will accrue to my wife and children by reason thereof." After execution, the deed was put upon record by the grantee; but neither she nor her husband attempted to exercise any control over the properties, other than the collection of some rents, which they immediately turned over to the grantor; nor did they contribute to the latter's support or make any effort to comply with their covenants in that respect. The plaintiff continued to treat the property as her own and received the rents as usual for about two years, when the grantee asserted a right as owner; whereupon her mother filed a bill in equity praying for a cancellation of the deed, upon the ground that she did not know what she was doing when she executed it, that she never intended to vest the property in her daughter in fee or to sign an instrument such as the one in question, and that her signature thereto was obtained by deception and fraud practiced by the defendant. The answer denied the material allegations of the bill and averred that the plaintiff executed the deed with full knowledge as to what she was doing. When the case came on for hearing, the chancellor found the facts above narrated, and, in addition, that at the time of the execution of the deed the plaintiff was a physically and mentally weak and infirm old woman who "did not appreciate or under-. stand that she was transferring......all her property"; that there had been no understanding or agreement between the parties that "as a further consideration for the property the defendant should maintain the plaintiff, and that there was no authority or direction given to insert a covenant for such support in the deed"; that almost immediately after securing the transfer of the property to her name the defendant and her husband mortgaged it for $1,800 and used the money for their own purposes; finally, "that the plaintiff was not of sound and disposing mind, that the signature to the deed

was obtained by fraud, that the plaintiff did not intend to sign and did not know that she was signing a deed, and that no consideration passed for the transfer of said property." On these findings the court below concluded that the deed was a nullity, and decreed accordingly.

There was enough in the proofs to justify the conclusion that the defendant had taken a fraudulent advantage of her mother's mental condition in order to procure the deed and, possibly, to raise a strong suspicion of wrong-doing on her part in other respects; but, we cannot agree with the chancellor that there was evidence to show a "deliberate and premeditated fraud" practiced upon the plaintiff which "smacks of collusion between the defendant and certain attorneys," nor can we agree that the grantor was not of "sound and disposing mind" in the technical legal meaning of that phrase. We do agree, however, that when the deed was signed the plaintiff's mind was so impaired that she could not properly understand such a transaction without an explanation of the effect of the instrument on her future rights in the premises, which does not appear to have been given. (See, Polt v. Polt, 205 Pa. 139.) The plaintiff said that no explanation whatever was vouchsafed to her, and while the defendant asserted that the deed was explained and her mother understood it, yet, she failed to give the details of what actually took place at the time, and without these her conclusions have no weight as evidence, for we cannot tell whether, in point of fact, they were justified. The plaintiff was nearly seventy years of age, and had suffered two paralytic strokes; she had had some trouble with a tenant, and she appears to have thought that if the houses were put in the defendant's name the latter could adjust this difficulty and have the trouble-maker ejected. The evidence justifies the conclusion that, in so far as the plaintiff appreciated the fact of the transfer of her property, she believed it but a temporary and revocable arrangement; but how a clause of revocation came to be omitted from the deed

is not shown, nor is there anything in the evidence to indicate that the plaintiff was informed that she could have such a clause inserted. Moreover, it is clear beyond a doubt, from the testimony of both the mother and daughter, that there never had been any talk or agreement between them which warranted the insertion of the covenants for the support of the former; in fact, the defendant testified that at the time the deed was being prepared her mother said that the property was to go to her (the daughter's) children, that it was understood by both that the plaintiff was to have the rents as long as she lived, and that nothing whatever was said about her support. In answer to the question, "Before the deed was drawn there was no talk between you and your mother about her support?" she replied, "No, sir, because she was to have the rents as long as she should live and that was sufficient support"; and this, in substance, she reiterated several times in the course of her testimony. The plaintiff had previously testified that she could not read or write, that the deed had not been read or explained to her, that she did not know what she was signing at the time her mark was placed thereon, and that she had been willing that her daughter's children should have the property, but not the daughter herself. Taking the proofs of both sides, two things appear (a) that the plaintiff lacked mental capacity to appreciate the business in hand as transacted at the time of the transfer of the property, and did not comprehend the nature and consequences of her act, (b) that the deed as drawn did not represent the intention of the parties; this being the case, we cannot say there was error in declaring it a nullity; for even if we were satisfied as to the plaintiff's appreciation and understanding of her act when she executed the deed, we could not reform the instrument, since the proofs are not sufficiently clear to show exactly what the parties wanted to accomplish thereby. It is plain, however, that the writing before us does not represent the intention of either of the par-

ties, and under the circumstances it might have been cancelled on that ground alone.

So far as the general sufficiency of the evidence is concerned, it is true that the Act of May 28, 1913, P. L. 358, abolishing the rule that the averments of a responsive answer must be overcome by the testimony of at least two witnesses or of one with corroborating circumstances, saves the old "requirements of proof in cases where it is attempted to reform or overthrow a written instrument"; but here the testimony of the plaintiff is supported by the undisputed fact that, despite the terms of the grant, she was permitted to receive the rents of the property as though it were absolutely her own. Again, if we accept the testimony of the defendant, then the plaintiff is supported by the circumstance that when the mortgage was created her consent was asked, or if we take the word of the plaintiff, we have the suspicious circumstance that the creation of the mortgage was kept a secret from her, and it is clear from the testimony of both parties that the covenants for support have no proper place in the deed; from any view one may take there are "corroborating circumstances equivalent to the testimony of another witness," hence, the proofs were sufficient to sustain the decree.

The only other important point concerns the refusal to permit a certain witness to testify for the defense. At the trial a member of the Schuylkill County bar appeared with another attorney for the defendant, and while cross-examining the plaintiff it developed that he had been paid a fee and acted as her counsel at the time of the execution of the deed under attack; thereupon the chancellor required him to retire from the case. This incident is presented to us and alleged as error prejudicial to the defendant; but we cannot so view it. To begin with, the lawyer who retired was associated with other counsel, and further, although at first protesting, subsequently he voluntarily withdrew, apparently thinking that he might thus qualify himself as a witness for

the defense.  The record shows that sometime after the court had ordered him to retire, when another witness was under examination, he stated, "In deference to the court's ruling I do withdraw from this case," and toward the close of the trial, when he was offered as a witness on behalf of the defendant, he said, "the record shows that I have withdrawn from this case"; it appears, therefore, that the only question we have before us is whether or not the chancellor erred in refusing to receive the testimony of this witness.  The Act of May 23, 1887, P. L. 158, provides that counsel shall not "be competent or permitted to testify to confidential communications made to him by his client......, unless,...... this privilege be waived upon the trial by the client." We feel that the witness came within this statutory prohibition, and that no error was committed in refusing to allow him to testify.  This is not a case where such a personal attack was made upon the integrity of the attorney in question as would permit him to reply in his own defense, for here there was nothing which could properly be so characterized, and anything which at all savors of that nature was brought out by his own cross-examination of the plaintiff; nor is it a case where the attorney had previously represented both parties, and for that reason was privileged to disclose communications made by one to the other; nor, since the formal execution of the deed was admitted, did the fact that the attorney was a subscribing witness qualify him to give the evidence offered at the trial; finally, we see no reversible error, for as already indicated, even on the defendant's testimony, which we must assume the witness would have corroborated had he been permitted to testify, the court below was justified in declaring that the deed did not express the intention of the parties.  No case has been cited to us, and we know of none, where an attorney who had previously represented the plaintiff in the very matter which gave rise to the litigation in court, was permitted to act for the other side and

cross examine his former client, or to appear voluntarily as a witness against her, using to her prejudice information gained while under her retainer; yet, that is this case, and all the general rules upon the subject must be viewed in their application to the circumstances at bar. For a full discussion of the subject under consideration see the opinion of SHARSWOOD, J., in Jeanes v. Fridenberg, 3 Clark 199, particularly at page 70; also see, Barry v. Coville, 53 Hun. 620; Foster v. Hall, 29 Mass. 89, 95; Kant v. Kessler, 114 Pa. 603; Moore v. Bray, 10 Pa. 519. In conclusion, the testimony of the notary who took the acknowledgment really amounts to nothing more than that he made the usual inquiries as to whether the parties respectively acknowledged the signatures as their act and deed, and received an affirmative reply; and the evidence given by several neighbors to the effect that the plaintiff had told them that she had conveyed the property to her daughter, although largely denied by her, is entirely consistent with the theory that she did not intend an absolute and irrevocable conveyance.

After the case was presented here, counsel for the appellant filed an affidavit calling attention to the fact that the exceptions in the court below were argued before the chancellor alone, and not before the court in banc, and that the final decree was entered "without argument having been heard by the other judges." The appellant contends that this was a violation of equity rule 66 which provides: "If exceptions shall be filed, they shall be heard upon the argument list as upon a rule for a new trial, and the judge or the court in banc shall have power to sustain or dismiss any of such exceptions and confirm, modify or change the decree accordingly." This rule clearly directs that exceptions shall be heard upon the argument list, and in counties having more than one judge it contemplates a review by the court in banc, that is, where possible, by the chancellor and one or more of his associates; it permits a review by the judge

who heard the case, where he has no associates, but it does not contemplate such practice where there is more than one judge available. No exception, however, was taken in the court below to the practice now called to our attention, and since the defendant did not suffer any material harm, she has no standing to complain. While a proper determination of the case does not require us to pass in detail upon each of the forty-three assignments, yet we have considered all of them and are not convinced of reversible error.

The decree is affirmed at the cost of the appellant.