# CASES

IN

# THE SUPREME COURT

OF

# PENNSYLVANIA

## Kicinko et al. *v.* Petruska et al., Appellants.

*Church law—Church property—Dedication to certain purposes—Diversion—Equity—Injunction—Judgment in prior suit—Res adjudicata—Estoppel.*

1. The estoppel of a judgment extends only to a question directly involved in the issue and not to any incidental or collateral matter however it may have arisen and been passed upon.

2. A decree in equity determining the right of a congregation to discharge a rector, under a contract which he had violated, does not bar a subsequent suit between members of the same congregation relating to the control of the church property, and it is not material that certain findings in the prior suit are not consistent with certain findings in the second suit, where the questions involved in such findings were merely incidental to the main questions at issue.

3. A congregation was incorporated in 1901 for the purpose of maintaining a place of worship according to the faith, doctrine, discipline, government and forms of the United Greek Catholic Church. Until 1914 the congregation adhered to the faith and practiced the ritual of the United Greek Catholic Church. In 1914 the congregation employed a priest who belonged to the Orthodox Greek Catholic Church and who began to preach the dogmas and perform the ceremonies of such denomination, so that a large number of the members forsook the charter purposes of the congregation, and practiced in the church the worship and forms of the Orthodox Greek Catholic Church, excluding from the church premises those who adhered to the United Greek Catholic

Church. A suit had been brought against this Greek Catholic Church and prosecuted to judgment, involving the right of the congregation to discharge its priest for violation of contract. In a suit in equity brought by the members of the congregation who adhered to the United Greek Catholic Church to enjoin the members in control from using the church property for the practice of the worship and forms of the Orthodox Greek Catholic Church, the lower court decided that the property had been acquired for the purpose of practicing the worship and forms of the United Greek Catholic Church and that it was impressed with a trust for that purpose; that the prior suit was not res adjudicata; and awarded the relief prayed for. *Held,* no error.

*Equity practice — Adjudications — Exceptions — Chancellor and other judges—Opinion—Appeals.*

4. Where a court consists of more than one judge, exceptions to an adjudication must be heard by the other members of the tribunal, in addition to the chancellor who tried the case, unless this course is made impossible by their physical disability or equally potent reasons, and the final disposition of the exceptions should be accompanied by a written opinion from the court in banc whenever the circumstances so require; and in the absence of such opinion the record will be returned by the appellate court for a written opinion by the court below.

Argued May 1, 1917. Appeal, No. 146, Oct. T., 1916, by defendants, from decree of C. P. Westmoreland Co., Equity Docket, No. 894, awarding an injunction, in case of John Kicinko, John Martin, John Mikulaninitz, Hritz Fendya, Vasil Svreda, Mike Panco, George Juhas, Paulina Skirpan, Joe Ory, Petro Dankanich, Paul Chertisky, John Fecko, Andy Miklovs, Vasil Valenter, Vasil Hardoby, Andy Halko, Joe Hulick, Vasil Sandala, George Hertnick, Vasil Lucanick, Andy Kocan, George Shuma, Jr., and Rev. Paul Ruttkay, members and Pastor of the Greek Catholic Church of the Assumption of the Blessed Virgin Mary; and the Greek Catholic Church of the Assumption of the Blessed Virgin Mary—John Kicenko, John Martin, John Mikulaninitz, Hritz Fendya, Vasil Svcreda, Petro Dankanich, and John Fecko, Trustees, v. John Petruska, Mike Kohut, Nik Kerestan, Mike Shurkay, George Shuma, Pet Ratica and George Mike,

and Rev. V. Levkanich, members and Pastor of the Russian Orthodox Greek Catholic St. Mary's Church; and the Russian Orthodox Greek Catholic St. Mary's Church —John Petruska, Mike Kohut, Nik Kerestan, Mike Skurkay, George Shuma and George Mika, officers. Before BROWN, C. J., MESTREZAT, MOSCHZISKER, FRAZER and WALLING, JJ. Affirmed.

Bill in equity for an injunction. Before DOTY, P. J., COPELAND, P. J., specially presiding, and MCCONNELL, J.

The opinion of the Supreme Court states the facts.

The court on final hearing awarded an injunction as prayed for. Defendants appealed.

*Errors assigned* were in dismissing exceptions to various findings of fact and law and the decree of the court.

*Lewis C. Walkinshaw,* with him *Hugh W. Walkinshaw,* for appellants.

*Adam M. Wyant* and *Gregory I. Zsatkovich,* with them *Edward E. Robbins,* for appellees.

OPINION BY MR. JUSTICE MOSCHZISKER, June 30, 1917:

This case arose out of religious differences existing between two factions of a church congregation; after an elaborate trial, the plaintiffs succeeded in obtaining an injunction against the defendants, as hereinafter more fully set forth; the latter have appealed.

The record is a long one; but the material features of the controversy may be stated with comparative briefness. The church in question was organized in 1901, in Monessen, and two years thereafter the congregation was incorporated under the name of the "Greek Catholic Church of the Assumption of the Blessed Virgin Mary," the charter stating: "The purpose for which the corporation is organized is the support and maintenance of a place for the worship of Almighty God in accordance to the faith, doctrine, discipline, government and forms of

the United Greek Catholic Church, as are now in force and effect and held, or may hereafter be passed and adopted by the governing or law-making power of said church, which it hereby accedes to, recognizes and adopts." From the date of its organization to 1914, when a priest named Levkanich came to the congregation, the members thereof adhered to the faith and practiced the ritual of the "United Greek Catholic Church," or "Uniate Greek Catholic Church," or "Uniat Greek Catholic Church," which title signifies an ecclesiastical body in union with the Roman Catholic Church and acknowledging the primacy and supremacy of the pope; and they did not believe in the teachings or follow the ritual of the "Orthodox Greek Catholic Church," or "Orthodox Catholic Church," which title is used to designate Catholic churches that refuse allegiance or obedience to the pope, looking to the czar of Russia as their ecclesiastical head and denying many of the fundamental doctrines of the Roman Catholic Church. Father Levkanich was an ordained priest of the "Orthodox" church, and shortly after his arrival in Monessen he began to preach the dogmas and perform the ceremonies of that denomination, with the result that a considerable number of parishioners forsook the charter purposes of the congregation; and, in the end, the orthodox persons took control, refusing those adhering to the original faith admission to the church premises. The property in question was built through the expenditure of money collected with the avowed intent of purchasing a lot and erecting thereon an edifice to be used "for the worship of Almighty God according to the faith, doctrine, discipline, government and rights, usages, customs, forms and beliefs of the United Greek Catholic Church." The chancellor found, inter alia, not only the foregoing facts, but also "that Rev. V. Levkanich was the guiding spirit in the attempt to divert this property to other uses than that for which it was dedicated, and to change its form of worship, doctrine, discipline, and government; and that this was

done with the approval, knowledge and consent of......
his followers in the congregation."

On the facts just stated, and upon other but subordinate findings, the court below decreed defendants be enjoined and restrained. from preaching, teaching or holding any religious services in the before-mentioned church property and from diverting the same "to any form of public worship other than that prescribed in its charter and followed by the congregation from the date of its organization"; also, Father Levkanich and others of the defendants were ordered to deliver up the keys of the church property to the present officers of the congregation, the latter being named in the decree, and the defendants were ordered to permit the rector, or priest, "trustees and members of the Greek Catholic Church of the Assumption of the Blessed Virgin Mary to enter said church and hold services therein," meaning thereby the priest and trustees chosen by the members who had adhered to the faith and followed the ritual designated in the church charter. This is the decree complained of.

We have examined the whole of the printed testimony, paying particular heed to the parts relied upon by appellants, but are not convinced of manifest error in any finding of fact; and, on the findings as made, the conclusions of the learned court below are inevitable.

As correctly stated by President Judge DOTY, in his concurring opinion, "This congregation......is self-governing in temporal affairs, electing its own trustees and holding title to the property in the names of the trustees or of the congregation, which practice was initiated by said congregation and acquiesced in by the [Roman Catholic] bishop of the diocese......Whether the church was wholly independent is not the decisive question. The real, important matter is whether the defendants, now in possession and control of the church property, had departed from the faith of the founders and changed certain forms, fundamentals and practices

of the church. This church was chartered......, and
the purpose set forth in the articles of association is as
follows: 'The purpose for which the corporation is or-
ganized is the support and maintenance of a place of
worship of Almighty God in accordance to the faith, doc-
trine, discipline, government and forms of the United
Greek Catholic Church, as are now in force and effect,
and held or may hereafter be passed and adopted by
the governing or law-making power of said church
which it hereby accedes to, recognizes and adopts.' The
church, of course, could be independent and yet adopt
fully the faith, doctrine, and practices of the United
Greek Catholic Church; it appears that......such reli-
gious rites have been observed in the Monessen church
since its organization until......the Rev. V. Levkanich
was chosen pastor......, that the Rev. V. Levkanich,
with the other [defendants]......has abolished in this
church the worship of Almighty God according to
the faith......and beliefs of the United Greek Cath-
olic Church......, and that various changes were in-
troduced,......some fundamental doctrines repudiated
and certain practices to which the congregation were
accustomed from its inception were abolished.......
The defendants cannot introduce such vital changes in
forms and fundamental doctrine and at the same time
assert the right of possession and control of the
[church] property." While the facts in none of the
cases we are about to cite are precisely like those at
bar, yet the material principles laid down and discussed
in these authorities are relevant and controlling; and
they fully sustain the view of the law stated in the ex-
cerpt just quoted from the opinion of the learned pres-
ident judge of the court below: See Schnorr's App.,
67 Pa. 138; Roshi's App., 69 Pa. 462; Sarver & Others'
App., 81½ Pa. 183; Greek Catholic Church v. Ortho-
dox Greek Church, 195 Pa. 425; Mazaika v. Grauczunas,
229 Pa. 47, 53.

The contention of defendants that, upon the doctrine

of res adjudicata, the decision in Berecz et al. v. Greek · Catholic Church et al., 3 Westmoreland L. J. 151, controls the present case, cannot be sustained. As said by Judge DOTY, in his concurring opinion at bar, "The two cases are not conflicting, and the Berecz case is not conclusive here; an examination of that case will show the issue [there involved] is not the one now presented." Albeit Berecz v. Greek Catholic Church concerned the same congregation with which we are now dealing and certain findings there may seem to be out of harmony with some of those at bar, yet these apparent inconsistencies are not substantial. In other words, the alleged differences involve matters which were in no sense controlling in the Berecz case, the real point there in controversy being the right of the congregation to discharge the then present complainant, who had been employed by the former as its priest under a contract which he had violated. "It is too well settled, to need either argument or authority to maintain it, that the estoppel of a judgment extends only to the question directly involved in the issue and not to any incidental or collateral matter, however it may have arisen and been passed upon": Lewis & Nelson's Appeal, 67 Pa. 153, 165. Here, there is no question as to the congregation's power to employ and discharge its priest, nor of the former's right to control the church property and manage its own temporal affairs; and the authorities cited to sustain the decree entered by the court below are not in conflict with the decisions of this court relied on by appellants; none of the latter the facts at bar. As to the cases cited from other jurisdictions, it is sufficient to say, we have enough of these church controversies adjudicated in our own State not to require light upon the subject from without.

When the present appeal first came before us, the defendants made it appear as though there was a substantial conflict between the adjudication in the Berecz case and the one at bar; and, since we then had no

opinion from the court in banc, it seemed as though two chancellors sitting in the same tribunal had made materially different and conflicting decisions concerning a like matter. Hence, we returned the record for a written opinion from the court in banc, under our well established rule in equity that, where a court consists of more than one judge, exceptions to an adjudication must be heard by other members of the tribunal in addition to the chancellor who tried the case, unless this course is made impossible by their physical disability or equally potent reasons; and the final disposition of the exceptions should be accompanied by a written opinion from the court in banc, whenever the circumstances so require (as they clearly do in the present instance). See Myers v. Consumers' Coal Co., 212 Pa. 193, 200-1; Id., 228 Pa. 444; Ebling v. Schuylkill Haven Borough, 244 Pa. 505, 511-12; Thomas v. Herring, 244 Pa. 550, 558-9.

We have not attempted to discuss in detail all of the fifty-three assignments; but we have examined each of them, and find no reversible error.

The decree is affirmed at the cost of the appellants.