SAINT NICHOLAS RUTHENIAN GREEK CATHOLIC CHURCH, a corporation of the State of Delaware, REV. BASIL MANIOSKY, HARRY LEWICKY AND STEPHEN FIGUN, members of Saint Nicholas Ruthenian Greek Catholic Church, a corporation of the State of Delaware, in behalf of themselves and also in behalf of such other members of said church as may desire to join as complainants herein,

*vs.*

REV. LOUIS BILANSKI, ANDREW KOCHAPSKY, MICHAEL LAJACRKOWSKY, STEPHEN SENCRYSRYN, DAMIAN MARCINYSRYN AND THEODOR BOHONOS.

*New Castle, July* 29, 1932.

50

52

*Harry Rubenstein,* for complainants, cross-defendants.

*John F. Lynn* and *Percy Warren Green,* for defendants, cross-complainants.

THE CHANCELLOR: The defendants attack the legality of the corporate existence of the complainant, St. Nicholas Ruthenian Greek Catholic Church. The point of their at-

tack is that it was incorporated under that provision of the law (*Section* 2176, *Revised Code* 1915) which is applicable only to denominations of Christians known as "Roman Catholic Church," whereas the complainant corporation, they say, is not of that denomination. The complainants take issue with this statement of fact and insist that the complainant corporation is of the Roman Catholic denomination. I find it unnecessary to enter upon a discussion of that issue, for, let it be as it may, the only use which the defendants, cross-complainants, seek to make of their side of it is as a basis for declaring that the charter of the corporation is void; and that is a result which they are not entitled to secure in this suit. The existence of the corporation cannot be attacked collaterally as the defendants, cross-complainants, seek to do. *McKee v. Standard Minerals Corp.*, 18 *Del. Ch.* 97, 156 *A.* 193. The objecting portion of the congregation for whom the defendants speak, themselves assisted in securing the action to be taken by which the title to the property was put in the corporation whose existence they now desire to challenge.

Another point of attack against the complainant corporation is that supposing it to be a lawfully existing corporation, the scheme of its organization and government is unreasonable and inequitable in that the same vests control of its property in a board of directors of five members, viz., the Bishop of the Ruthenian Greek Catholic Church of the United States of America, the Vicar General, the pastor in charge of the parish and their successors *virtute officii,* and two members to be selected annually by the congregation, thereby depriving the congregation of the power to choose a majority of the board to control the church property. The cross-complainants pray that the corporation complainant be compelled to amend its charter so as to change the scheme of government of the corporation in such way as to admit the congregation to a control of its affairs. I know of no authority by which this court would be justified in

rebuilding the corporate structure in the manner prayed. Whether as a matter of policy it is unjust and inequitable for a religious organization's temporal affairs to be controlled by ecclesiastics rather than by the people of the congregation is a matter which would admit of a conflict of views. What any individual's views about it may be is of no importance. The law under which the corporation was created clearly admits of ecclesiastical control, and it would be going a great length indeed for this court to say that such a scheme of control is so unjust and inequitable as to not be permissible, especially when the very congregation in whose behalf the protest is now made assented to such control when the title was conveyed.

The next question is whether or not the act of the new priest, Father Maniosky, in making a departure from the order and ritual of service was such an act as justified a portion of the congregation in using the means of force it did to interfere with the use of the church for purposes of worship under his leadership as the priest.

The Greek Catholic Church is an ecclesiastical body in union with the Roman Catholic Church. It acknowledges the primacy and supremacy of the Pope. The certificate of incorporation of the complainant corporation indicates this fact to be so in the part thereof where the qualifications of membership in the corporation are stated to be such as are required by the church law, rules and regulations of the Ruthenian Greek Catholic Church, "united with Rome." This union took place in the Sixteenth Century. Since then the Greek Catholic Church has been under the jurisdiction of Rome. Its bishops are appointed by the Pope, as was the bishop who organized the church in Wilmington and as were the bishops who for nineteen years delegated priests to its parish. "Ruthenian" in the name is of only racial significance. "Greek Catholic Church" appears to be the important phrase. Since its union with the Roman Church, the Greek Catholic Church has been completely divorced

from all connection with the "Orthodox Greek Catholic Church," which refuses allegiance to the Pope.

The evidence shows that when the union was effected between the Greek Catholic Church and the Roman Catholic Church (whose correct designation, I may say, is Holy Roman Apostolic Church), the Pope gave certain guaranties to the Greek Catholic Church. In the essentials of faith the two churches were and are the same. There are certain differences in rites, which are not regarded as going to the essentials of faith. The guaranties of the Pope, repeated by some of his successors in office, were to the effect that the rites practiced by the Greek Catholics should remain undisturbed, and that they should not be forced to accept the Latin rites which were and are practiced by the Roman Church.

The controversy in the Wilmington church appears to have been occasioned by what is charged by the defendants to have been an attempt by Father Maniosky to introduce a deviation from the accustomed Ruthenian Greek Church rites in favor of the Latin rites of the Roman Church. This court is asked to decide whether such deviation as was shown, was lawful under the concordat of union and the guaranties of the Pope before referred to. The principal innovation introduced by the local priest appears to have consisted in the alteration of a word in the mass book. A witness, Dr. Crosby, whom I may call the defendant's expert witness, testified in substance that the change of the word in the mass book in his opinion should not have been made, but that that was only his personal opinion.

The controversy raised by the dissenting faction has to do with a question that lies in the field of church law. The church has a body of ecclesiastical law by which all such controversies may be settled by appropriate tribunals, with a system of appeals which reach to the Pope as the final arbiter. Now in this case upon a pure question of whether a priest has offended against the settled rights of the

church, the members of the congregation who disagree with him appeal to this court to act as the arbiter of the dispute, ignoring the tribunals established by the ecclesiastical organization of which they are a part for the hearing and settlement of such controversies. The question however embraces that and more, for I conclude from the evidence that the defendants are animated by a motive to install as their priest and pastor a man who is in no wise affiliated with the Ruthenian Greek Catholic Church. They desire to use the church property for worship under the forms, doctrine and faith of the Orthodox Greek Church, which as before stated is entirely foreign to and different from the Roman Catholic Church with which the Ruthenian Greek Catholic Church was joined in union four centuries ago and has ever since remained in union.

There need be no express dedication of a church property to the worship of God according to the doctrine and faith of a given church in order to affix to it the character which the purpose of its creation and the continued use made of it by its congregation would indicate as its purpose —in so far at least as the right is concerned of a faction to take charge of the church and divert its use to other and different purposes of religious worship. *Kicinko v. Petruska, et al.*, 259 *Pa.* 1, 102 *A.* 286. The local church was founded by the Bishop of the Ruthenian Greek Catholic Church. For years it was dedicated to the practice of religion according to the doctrines and rites of that church. The charter it subsequently obtained under which the corporation was formed to which title was conveyed, shows that the property was for the use of that church. I conclude from the evidence that the defendants are attempting to seize the church property and dedicate it to the use and enjoyment of another church. This they have no right to do. If they conceive that the duly accredited priest is offending against the rites and usages of the church which the property was dedicated to serve, it seems to me that

they should exhaust the remedial methods supplied by the church itself for the correction of such breaches as are alleged against the pastor before thinking of coming into a secular court. Whether after having done that and having been overruled they would be entitled to relief in the civil courts is a matter I need not consider, for they have not as yet pursued their ecclesiastical remedy. It seems that they did appeal to the bishop, who remained silent. But surely the failure of the bishop to acknowledge their appeal cannot serve to terminate their right to a decision under the church law.

The prayers of the bill should be granted and the cross-bill should be dismissed.