## MALOTT v. COLLINSVILLE, C. & E. ST. L. ELECTRIC R. CO.

(Circuit Court of Appeals, Seventh Circuit. April 9, 1901.)

### No. 733.

1. RAILROADS—CROSSINGS—ILLINOIS STATUTE.

Rev. St. Ill. c. 114, § 209 (Act May 27, 1889), which provides that, in case there is objection by a railroad company to the place or mode of crossing its tracks desired by another road, either party may apply to the state board of railroad and warehouse commissioners, who shall view the ground, and, after full investigation, and with due regard to the safety of life and property, prescribe the place and manner of such crossing, must be construed as in pari materia with sections 18 and 20 of the same chapter (Act March 1, 1872, §§ 17, 19), which provide generally for the exercise of the power of eminent domain by railroad companies, and as making a valid provision for the modification of the procedure under such prior statute so far as relates to the place and manner of constructing railroad crossings, in the interest of greater safety: and a court, in a proceeding by one company to condemn right of way for a crossing over another road, or even in an equitable proceeding to require a receiver to consent to such crossing, cannot properly refuse to give effect to such provisions by ignoring proceedings instituted by the defendant company thereunder before the commission to have the place and manner of the crossing determined.

2. SAME—ELECTRIC RAILROAD COMPANIES.

A corporation organized in Illinois for the purpose of building and operating an electric railroad, and incorporated under the provisions of the general railroad act (Rev. St. Ill. c. 114), is a railroad company, for all purposes relating to the exercise of the power of eminent domain, and subject to all statutory provisions affecting the right of such companies to make crossings over the tracks of other railroads.

Appeal from the Circuit Court of the United States for the Southern District of Illinois.

In November 1896, upon the bill of Mark T. Cox, James A. Blair and James W. Paul Jr., in the Circuit Court for the Southern District of Illinois, against the Terre Haute & Indianapolis Railroad Company, seeking certain equitable relief growing out of its relations with the Terre Haute & Peoria Railroad Company, the appellant was appointed receiver of the first mentioned road, and as such took possession of, and operated the railroad up to and including the time when the transactions constituting the subject-matter of this appeal occurred.

March 8, 1900, an intervening petition was filed by the appellee, a corporation, organized under the act of March 1, 1872, providing for the incorporation of railroad corporations in Illinois (Rev. St. Ill. c. 114), to construct and operate an electric railroad for the carriage of passengers, etc., from Collinsville in Madison County to the City of East St. Louis in that state. The intervening petition sets forth that the bulk of the construction of this road had been completed, but that, in order to finally complete and operate the same, it was necessary to cross the Terre Haute & Indianapolis Railroad near Caseyville in St. Clair County; that the appellee had been unable, after due efforts, to make an agreement with appellant for such crossing; and praying an order authorizing the appellee to construct and operate its electric railway across the railroad at the place mentioned upon such just and reasonable terms as should be fixed by the judge. Later an amendment, immaterial to the case under consideration, was filed.

August 2, 1900, an amended petition was filed, in substance the same as the original, except that it is shown that the Terre Haute and Indianapolis Railroad runs, controls, and operates, the road as lessee of the St. Louis, Vandalia & Terre Haute Railroad, under a lease running for nine hundred and ninety-nine years, and that the proposed crossing is located at a definite point—one hundred and fifty feet west of the end of a switch or sidetrack — and is said to require about ten feet, in width, where the same crosses the railroad tracks, and the right to construct a fill on each side of the track of forty feet at the bottom. It is also averred that the right of way asked is for a public purpose, and the prayer is for an order, authorizing the appellee to construct and operate an electric railway over the railroad, at the place mentioned, "after the payment of compensation that may be fixed herein."

To the amended petition appellant demurred, for the reason (a) that it did not present a case cognizable in equity; (b) that it did not present a case sufficient to entitle the petitioner to the relief demanded or any relief; and (c) that there was a defect of parties, in that the St. Louis, Vandalia & Terre Haute Railroad Company, lessor of the Terre Haute & Indianapolis Railroad Company, was not made a party; but the demurrer was overruled.

Thereupon appellant asked leave to answer, the proposed answer containing, among other things, the following: "He admits that the petitioner has been unable to make agreement with him for crossing the St. Louis, Vandalia & Terre Haute Railroad for the reason among others that said crossing would be dangerous to passengers carried over either railroad unless said crossing were properly protected by safety appliances such as are in general use in the State of Illinois pursuant to the experience of railroad companies and the laws of said state, or were made an overhead or an underground crossing and the petitioner refused to make anything except a grade crossing and refused to protect the same in the manner above stated; and thereupon said receiver says that he together with the St. Louis, Vandalia & Terre Haute Railroad Company instituted proceedings before the Board of Railroad and Warehouse Commissioners of the State of Illinois, for the purpose of having the place and mode of said crossing determined by said Board pursuant to the statute of Illinois in such cases made and provided; and the petitioner herein appeared to said proceedings, and the same are now pending before said Board and still undetermined," to which objection was made by appellee upon the ground that under the practice of the Supreme Court of Illinois it is not allowable to file an answer to a petition in eminent domain proceedings;

which objection, upon the grounds stated, was sustained, and leave to file an answer refused.

A motion to refer the case to a master was, for a like reason, overruled.

This was followed by proceedings described in the record as follows: "And a part of the evidence having been submitted to the Court and the same having been duly considered it is now ordered, adjudged and decreed by the court that said the Collinsville, Caseyville & E. St. Louis Electric Railroad Company is entitled to a crossing of the said St. Louis, Vandalia & Terre Haute Railroad at grade at the point named in the last amended intervening petition herein as in said petition prayed.

"It is now further ordered by the court that the determination of the amount of compensation to be allowed for such crossing be submitted to a jury and that the twelve persons named in the special venire and selected pursuant to the order of this Court this day made and entered, be called to the jury box.   *   *   *"

The jury, thus summoned and sworn, as provided in section 8, c. 47, Rev. St. Ill. (the oath prescribed for jurors in eminent domain proceedings), having heard the evidence, returned a verdict finding the compensation to be paid to appellant the sum of forty dollars; upon which verdict a judgment was entered, that, upon the payment of this amount to the county treasurer of St. Clair County for the use of appellant, the appellee might enter upon the right of way and track of the St. Louis, Vandalia & Terre Haute Railroad Company, at the proposed crossing, for a width of ten feet over the tracks, and a width of forty feet across the right of way; said crossing to be put in and maintained by appellee at its own expense.

Exceptions were duly made and noted, and from this judgment the appeal is prosecuted.

The testimony, other than that relating to the value of the right of way taken, in substance showed, that the electric road, starting at Edgemont, about five miles from East St. Louis (where it connected with a suburban road to East St. Louis), proceeded to Caseyville, distant about four miles, and then to Collinsville, about three miles further; that at the time of the hearing the road was already in operation on both sides of the railroad track at Caseyville, a car from each side running every hour and a half from seven a. m. until twelve at night; that the proposed crossing was within the corporate limits of Caseyville, but was not upon any street actually opened (though one had been authorized by ordinance of July 19, 1900), the land on both sides being farmed in corn; and that, by ordinance passed November 6, 1899—ten months previously—a franchise had been granted to lay and operate said electric road upon Long street, as it then existed, not including the crossing.

No evidence was offered relating to the character or suitability of the crossing other than the foregoing; or to any safety appliances; or to the practicability of an overhead or an underhead crossing at either this point or near by. At this point in the proceedings the record contains the following: "Petitioner now desires to state that we stipulate the Collinsville, Caseyville & St. Louis Electric Railroad Company will put the crossing in at a time not to interfere with the operation of the St. Louis, Vandalia & Terre Haute Railroad and pay the expense of putting it in and maintaining it in first class condition.

"If the Court finds that we have proved our petition in eminent domain we will ask the jury to come and fix the compensation.

"The Court: 'The court finds the petition proven and that the petitioner has a right to make its crossing and condemn the same for said purpose.'" And this colloquy was followed by evidence relating to value.

The further facts are stated in the opinion of the court.

Among other errors assigned are the following:

(1) The court below erred in entertaining and assuming jurisdiction of a proceeding in eminent domain; (2) in overruling the demurrer of appellant to the amended intervening petition; (3) in holding that the matters set forth in the amended intervening petition presented a case cognizable in equity; (4) in holding that the matters presented in the intervening petition were suffi-

cient to entitle appellee to the relief demanded; (5) in holding that the St. Louis, Vandalia & Terre Haute Railroad Company was not a necessary party; (6) in refusing to permit appellant to file the answer; (7) in adjudging that appellee was entitled to a crossing at grade at the point named; and (8) in rendering a final decree allowing appellee to enter upon the premises described.

John G. Williams, for appellant.

W. S. Foreman and D. M. Browning, for appellee.

Before WOODS, JENKINS, and GROSSCUP, Circuit Judges.

After the foregoing statement of the case, GROSSCUP, Circuit Judge, delivered the opinion of the court, as follows:

It is not necessary that we should determine whether the court, sitting in equity, and having jurisdiction, through the receivership, to administer the Terre Haute & Indianapolis Railroad Company had power, upon a proper showing, to order the receiver to assent to, or contract respecting, the crossing named, upon the terms named. This view of the case, manifestly, was not in the mind of the court; for the appellant was refused leave to file an answer; no cognizance was taken of the policy of the state relating to railway crossings; and no testimony heard or required that would throw light upon the suitableness of the crossing proposed, or the general equity of the order asked. The demand of the appellee seems to have been regarded as one of right, subject only to the fixing and payment of compensation, as in eminent domain proceedings.

As an action, purely in eminent domain, the attitude and rulings of the Circuit Court seem to us to have been in conflict with both the letter and the spirit of the laws of the State of Illinois. Section 209, c. 114, Rev. St. Ill. (an act approved May 27, 1889) provides:

"That hereafter any railroad company desiring to cross with its tracks the main line of another railroad company, shall construct the crossing at such place and in such manner as will not unnecessarily impede or endanger the travel or transportation upon the railway so crossed. If in any case objection be made to the place or mode of crossing proposed by the company desiring the same, either party may apply to the board of railroad and warehouse commissioners, and it shall be their duty to view the ground, and give all parties interested an opportunity to be heard. After full investigation, and with due regard to safety of life and property, said board shall give a decision, prescribing the place where and the manner in which said crossing shall be made, but in all cases the compensation to be paid for property actually required for the crossing and all damages resulting therefrom shall be determined in the manner provided by law in case the parties fail to agree."

The answer offered by the appellant avers that the appellant objected to the place and mode of crossing, and there being a refusal to meet this objection, proceedings were instituted by the appellant, in pursuance of the section just recited, before the Board of Railroad and Warehouse Commissioners of Illinois, to have the place and mode of the crossing determined by the Board. The refusal to entertain this answer, or to take any account of the proceedings before the Board, ruled out, in effect, the statute as having any relation to the exercise of the right of eminent domain.

There have been no rulings by the Supreme Court of the State

involving the effect of this statute upon the pre-existing law of eminent domain; but we think it clear that Section 209 is to be regarded as in pari materia with Sections 17 and 19 of the Act of March 1, 1872. (Sections 18, 20, c. 114. Rev. St.), which, so far as material to this case, read as follows:

Sec. 18: "If any such corporation shall be unable to agree with the owner for the purchase of any real estate required for the purposes of its incorporation, or the transaction of its business, or for its depots, station buildings, machine and repair shops, or for right of way or any other lawful purpose connected with or necessary to the building, operating or running of said road, such corporation may acquire such title in the manner that may be now or hereafter provided for by any law of eminent domain."

Sec. 20: "Every corporation formed under this act" (railroad corporations) "shall, in addition to the powers hereinbefore conferred, have power: * * * Sixth—To cross, intersect, join and unite its railways with any other railway before constructed, at any point in its route, * * * and every corporation whose railway is or shall be hereafter intersected by any new railway, shall unite with the corporation owning such new railway in forming such intersections and connections * * * and if the two corporations can not agree upon the amount of compensation to be made therefor, or the points and manner of such crossings and connections, the same shall be ascertained and determined in manner prescribed by law."

Neither section 17 or 19 of the act of 1872 prescribed any tribunal by whom, in case of dispute, the place or manner of the crossing should be determined. Coming under interpretation, in this respect, of the Supreme Court of Illinois, in 1881, it was held that, where the parties did not agree, the power of selecting the place and manner of the proposed crossing belonged to the railroad seeking the right of way. Lake Shore & M. S. Ry. Co. v. Chicago & W. I. R. Co., 97 Ill. 506. The statute of May 27, 1889 makes no departure from sections 17 and 19 of the act of 1872, except in its provision that in case of objection to the place or mode of crossing proposed by the company desiring the same, either party may apply to the Board of Railroad and Warehouse Commissioners, which Board, after full investigation, shall prescribe the place and manner of such crossing.

We think it clear that, in respect of the place and manner of crossing, and an independent tribunal to determine such place and manner, the latter legislation was intended to modify the former, as the former had been construed by the Supreme Court of the State. In no state is the mileage of railways so great as that of Illinois. In no state has the extension of railways been so rapid. Nearly every township is now intersected, north and south, and east and west, by these great railways. With the increase of mileage has come, also, multiplying of trains, on the roads already laid, and growing need for greater speed. There has been no time when the grade crossing was not attended with danger, and no time when the danger, from all these sources, was not rapidly increasing. The purpose behind the act of 1889 is, we think, clearly disclosed in this rapid evolution of the railway situation.

The act of 1889 doubtless looked toward an escape, as far as possible, from grade crossings. It could be accomplished only by crossing overhead or underneath, and this, in turn, depended frequently

upon the topography of the place where the crossing was made; hence the provision in the act of 1889 (to that extent modifying sections 17 and 19, act of 1872), that in case of objection, both manner and place of crossing should be left to the disposal of a state board.

Our conclusion as to the purpose of the act is reinforced by the fact that it followed shortly after the decision of Lake Shore & M. S. Ry. Co. v. Chicago & W. I. R. Co., supra; by the fact that any other interpretation would leave the act emasculated of any substantial meaning; and by the fact that another Act looking to the better protection of grade crossings by interlocking devices quickly followed—an Act itself having no meaning, unless read in pari materia with Sections 17 and 19 of the act of 1872, and also the act of 1889.

The inquiry then arises: Is the appellee a railroad company, within the meaning of the Act of May 27, 1889; and is its exercise of the right of eminent domain subject to the provision and limitations of that Act.

It was incorporated under the law of March 1, 1872, relating to the incorporation of railroad companies. Its articles of incorporation are on file in the office of the Secretary of State of Illinois in the book of Railroad Records. It took, and unquestionably intended to take, under its charter, the powers of a railroad corporation; among them the railroad corporation's right of eminent domain.

The fact that its trains are to be operated by electricity instead of steam does not affect its place in the laws of the state, as a railroad company. There is nothing in the acts of 1872 and 1889 that restricts railroads therein mentioned to the use of steam as a motive power, or prevents existing steam roads from changing their motive power to that of electricity. There is nothing in these Acts that necessarily or fairly excludes its application to electrical roads, as they now exist; indeed, these electrical roads, in the speed of their trains, in the distances travelled, and in their capabilities for transportation, are well within the field of public utilities hitherto occupied by the steam railroads alone. We can not conceive that these acts, so far, at least, as they are reasonably applicable, were not meant to cover every form of railroad that, in the march of events, answers the purposes of general transportation. Nor does their incidental function as street railways, in the towns or cities traversed, lift them out of the railroad statutes; for it has been held that an elevated road—wholly intramural—is, in its creation and its powers, within the contemplation of the railroad statutes, and exercises its right of eminent domain by virtue of those statutes. Lieberman v. Railroad Co., 141 Ill. 140, 30 N. E. 544.

Indeed, if the appellee be not a railroad, within the meaning of the Act of March 1, 1872, as modified by the Act of May 27, 1889, and other Acts relating thereto, we can find no authority for its existence, as a corporation, or for its exercise of the right of eminent domain. Since the Illinois State Constitution of 1870, no corporation can be created, except under some general statute of the General Assembly. Article 11, Const. 1870. The legitimacy of a

corporation is tested by its ability to point to the specific statute of its origin. From what general statute of the state has the appellee sprung, if not from the act of 1872? From what other statute has it invoked the spark of life that gives it existence and the rights of a corporation?

The right of eminent domain must have a like specific statutory origin. It can not exist outside of some specific statute, and statutes of this character, being in derogation of the common law, are to be strictly construed. Ligare v. City of Chicago, 139 Ill. 46, 28 N. E. 934. A survey of the Illinois statutes shows that the right has been granted in favor of mill sites, drains, parks, streets, highways, toll roads, telegraph lines, sanitary districts, horse and dummy roads, and railroads. To which one of this catalogue can appellee trace its right, except to the railroad acts? It is not a horse or dummy road, within the Act of March 19, 1874; for it was not so organized, and has not accepted the burdens or limitations of that act. It is not entitled to open a street; the right of eminent domain, for that purpose, is vested in the municipal authorities. It is not a highway or toll road, within the meaning of the law. Unless a railroad, within the acts of 1872 and 1889, it is a corporation, sui generis—exercising the high right of eminent domain from an origin sui generis—a conception impossible under the Constitution and laws of Illinois. This disposes of the case, so far as it may be regarded as a suit purely in eminent domain; for the right of the appellant to take the judgment of the Railroad and Warehouse Commissioners upon the manner and place of the crossing is one that can not be denied without committing error.

Nor may the court, sitting under the lesser restrictions of chancery, ignore this general and salutary policy of the state. From all that appears, a crossing at grade might have been avoided, either at the point where the crossing was proposed, or at some point adjacent; or, in the absence of this, circumstances might have been shown imposing upon the court the duty of protecting the crossing at grade by some interlocking or safety device, as contemplated by the Act of July 1, 1891. No evidence respecting these inquiries was heard or required—the answer raising them was refused; the court seemed to be under the impression that, in these respects, its hands were tied. We are compelled to hold that this attitude of the court, toward inquiries so closely related to the policy of the state, and the safety of the travelling public, was mistaken, and that the order ensuing was improvident.

The order of the Circuit Court is, accordingly, reversed, and the case remanded, with directions to enter an order not inconsistent with this opinion.