WILLIAM GIBSON, HARRY J. ROTHROCK, and FRANK H. LONG, acting as the Session of the TRUSTEES OF PENCADER PRESBYTERIAN CHURCH IN PENCADER HUNDRED, and CHARLES L. CANDEE, WILLARD G. PURDY, JOHN H. DARLING and DONALD C. MACLEOD, acting as the Legal Committee of the Presbytery of New Castle of The Presbyterian Church in the United States of America, duly authorized by the said Presbytery, and individually as members of The Presbyterian Church in the Uinted States of America,

*vs.*

TRUSTEES OF PENCADER PRESBYTERIAN CHURCH IN PENCADER HUNDRED, HENRY G. WELBON, THOMAS C. BROWN, GEORGE BROWN and WALTER E. CANN.

ALBERT H. KLEFFMAN, HAROLD L. SPRINGER and H. WADE RINEHART, acting as the Session of Eastlake Presbyterian Church of Wilmington, Delaware, and CHARLES L. CANDEE, WILLARD G. PURDY, JOHN H. DARLING and DONALD C. MACLEOD, acting as the Legal Committee of the Presbytery of New Castle of The Presbyterian Church in the United States of America, duly authorized by the said Presbytery of New Castle, and individually as members of The Presbyterian Church in the United States of America,

*vs.*

EASTLAKE PRESBYTERIAN CHURCH OF WILMINGTON, DELAWARE, INCORPORATED, a religious corporation of the State of Delaware, and JOHN P. CLELLAND, RALPH LOGUE, WILLIAM C. MILLER, JR., WILLARD PIERCE and HARRY MAJOR.

*New Castle, Dec. 27, 1939.*

*Caleb S. Layton,* of the firm of Richards, Layton & Finger, for complainants.

*Edward W. Cooch,* for defendants in bill filed against Pencader Presbyterian Church and others.

*Henry R. Isaacs,* for defendants in bill filed against Eastlake Presbyterian Church and others.

THE CHANCELLOR: Both of these cases involved the same question, and were argued together on demurrers to the bills filed.

The Pencader Presbyterian Church was organized, at least, as early as 1710, and is, therefore, one of the oldest churches in this State. The original deed for the church property does not seem to be recorded, but the complainants in that bill allege, on information and belief, that the land on which the church is erected at Glasgow, New Castle County, Delaware, is a part of the same land conveyed by the deed of Margaret Williams, widow and executrix of Roger Williams, to Timothy Griffith, and others, the minister and elders of the Presbyterian Congregation, at Pencader. The deed was acknowledged at the May Term of Court, in New Castle County, in the year 1746. The church was subsequently duly incorporated under the name of "Trustees of Pencader Presbyterian Church in Pencader Hundred" in 1790, pursuant to the provisions of *Chapter 144 b, Volume 2 Laws of Delaware (Rev. Code of 1829, p. 459)*, which was enacted in 1787; and the certificate of incorporation was then filed and recorded in the proper office in New Castle County. In the deed to the Pencader Presbyterian Church corporation the land therein conveyed is described, in part, as "All that certain lot, piece or parcel of land, on which is located the brick church building, known as the Presbyterian Church in Pencader Hundred, situated in the Village of Glasgow, Pencader Hundred, New Castle County, Delaware." In the same deed, the lot conveyed is, also, described by metes and bounds, and the brick church building is again referred to in precisely the same language, appearing in the above quotation.

The Eastlake Presbyterian Church was incorporated in the year 1903, under the name of "Eastlake Presbyterian Church of Wilmington, Delaware, Incorporated," pursuant to the provisions of *Chapter 39 of the Revised Code of 1893 (Rev. Code of 1935, § 2471, etc.)*, which is substantially the

same statute appearing as *Chapter 144 b, Volume 2, Laws of Delaware.* The lot upon which the church is erected was conveyed to the Eastlake Presbyterian Church corporation by the Presbyterian Alliance of Wilmington, Delaware, which was a corporation created, among other things, for the purpose of providing religious services for destitute localities, and to foster and advance the cause of Presbyterianism in the City of Wilmington and vicinity; the property so conveyed was deeded in furtherance of the corporate objects of the grantor.

Since prior to the foundation of the United States of America, The Presbyterian Church in the United States of America has been the organization with which persons, worshiping according to the Presbyterian belief, have been affiliated, and the members of said church have avowed allegiance thereto and to its doctrine, government, discipline and rules by becoming members thereof. Since the time of its incorporation in 1790, and prior thereto, the Pencader Presbyterian Church has been affiliated with The Presbyterian Church in the United States of America; and until a recent date the congregation of that church has worshipped in accordance with the doctrines and beliefs of the said The Presbyterian Church in the United States of America, and has been governed by the discipline and rules of that church. In fact, the lands and premises above described, on which the Pencader Church is located, have at all times since their acquisition in 1746, until a recent date, been used and enjoyed by the congregation of that church and by other members of The Presbyterian Church in the United States of America, in connection with and in furtherance of divine worship, pursuant to the doctrine, government, discipline and rules of The Presbyterian Church in the United States of America; and the personal property contained therein, and all moneys or other funds of the said Pencader Presbyterian Church have, also, been used and employed for the same purpose.

Since its organization, and until a recent date, the congregation of the Eastlake Presbyterian Church likewise has been at all times affiliated with The Presbyterian Church in the United States of America, and has been subject to and governed by the doctrine, government, discipline and rules of that organization.

Under the form of government of The Presbyterian Church in the United States of America, the entire governmental power of that denomination, legislative, executive and judicial, is vested in church judicatories, consisting of the Session, which has jurisdiction over affairs pertaining to a single congregation; the Presbytery, having jurisdiction over a certain district, comprising several congregations; the Synod, having jurisdiction over a still larger district, including several Presbyteries; and the General Assembly having jurisdiction over the affairs pertaining to the entire church. The General Assembly is the supreme judicatory of the church, representing in one body all the particular churches thereof. In the exercise of its supreme legislative, judicial and executive power, it has complete control over all of the inferior judicatories, and, in like manner, the Synod has control over all of the Presbyteries, Sessions and Congregations, and the Presbyteries over the Sessions and Congregations. Every member joining the Presbyterian Church is required to submit himself to all of the rules and regulations and governmental authority of the denomination, and each congregation of the denomination is required to do likewise. Both of the congregations involved in these suits were organized as congregations of The Presbyterian Church in the United States of America, and under the form of government above described. They were received into the Presbytery of New Castle, within the bounds of which they are located; that Presbytery being in allegiance to the Synod of said church, and the Synod being in allegiance to the General Assembly.

Under the leadership of the Rev. J. Gresham Machen, a controversy arose within the Presbyterian Church in 1933, pertaining to modernism in the Presbyterian Board of Foreign Missions. This dispute was presented to the General Assembly of the Presbyterian Church, and Dr. Machen's attack upon the orthodoxy of the persons composing the Board of Foreign Missions of the Presbyterian Church was overwhelmingly rejected. He then organized an Independent Board of Foreign Missions, and by due action the General Assembly directed all ministers and laymen affiliated with The Presbyterian Church in the United States of America to sever their connection with the Independent Board. Dr. Machen was called upon to resign from that board, but refused to do so. Charges were subsequently preferred against him, which passed through the various judicatories of the church and resulted in his suspension from The Presbyterian Church in the United States of America. Dr. Machen then formed a new church known as "The Presbyterian Church of America," and he and his associates renounced their connection with The Presbyterian Church in the United States of America. The Rev. Henry G. Welbon, the minister of the Pencader Presbyterian Church, and the Rev. John P. Clelland, the minister of the Eastlake Presbyterian Church, both became followers of Dr. Machen, condemned the act of the General Assembly, and, in effect, charged The Presbyterian Church in the United States of America with heresy. By due action taken by the Presbytery of New Castle, charges were subsequently preferred against both of these ministers, and they were deposed from their respective offices as Ministers of the Gospel in The Presbyterian Church in the United States of America. In both the Pencader Presbyterian Church and the Eastlake Presbyterian Church, the followers of Dr. Machen adopted resolutions, stating that they had withdrawn from the Presbytery of New Castle, and denied that it had any jurisdiction over them. In the Pencader Presbyterian Church, the Rev. Henry G. Welbon and his followers, and in the Eastlake Presby-

terian Church, the Rev. John P. Clelland and his followers continued to use the property of the respective church corporations in affiliation with the Presbyterian Church of America, the new organization established by Dr. Machen, to the exclusion of the loyal members of The Presbyterian Church in the United States of America, and the property designated officials of the Presbytery of New Castle.

All of these facts are alleged in the bills, and admitted by the demurrers thereto.

The right to secede from the old established The Presbyterian Church in the United States of America, which has been in existence in this country for many generations, and with which both of these churches have been affiliated since their very organization, is, therefore, involved. The right of the members of a congregation to take that step and to associate themselves with a new and different Presbyterian Church, with an entirely different governing body, may perhaps be permissible under some circumstances; but when a part, or even all of them, attempt to take and use the church and its property in connection with any such organization, and for the sole purpose of promoting its interest to the exclusion of the loyal members of The Presbyterian Church in the United States of America, very different principles may be involved. No express trust provisions are inserted in either the deed to the Pencader Presbyterian Church corporation or to the Eastlake Presbyterian Church corporation, but, in view of prior decisions of this court, the defendants necessarily concede that religious corporations created under the general statutes above referred to (*Chapt.* 144 *b, Vol.* 2 *Laws of Delaware, Rev. Code of* 1829, *p.* 459; *Rev. Code of* 1893, *Chapt.* 39, *Rev. Code of* 1935, *Chapt.* 68, § 2471, *etc.*) are distinct entities, separate and apart from the local religious associations or congregations using the churches so conveyed, and that trusts, at least for the benefit of such local societies or congregations, are, therefore, implied. *St. Nicholas Ruthenian*

*Greek Catholic Church v. Bilanski, et al.,* 19 *Del. Ch.* 49, 162 *A.* 60; *Bouchelle, et al., v. Trustees of Presbyterian Congregation, etc.,* 22 *Del. Ch.* 58, 194 *A.* 100. They deny, however, that any broader trusts, limiting the religious purposes for which a denominational church may be used, and in any sense for the benefit of any and all members of The Presbyterian Church in the United States of America, can be implied, or that, in principle, the Delaware cases above cited control this case. That these cases involve somewhat different facts is conceded, but that they differ in principle is denied by the complainants.

The title to the act, under which the Pencader Presbyterian Church was incorporated in 1790 (*Chapt.* 144 *b, Vol.* 2 *Laws of Delaware, Rev. Code of* 1829, *p.* 459) was "An Act to Enable Religious Denominations in this State to appoint Trustees, who Shall be a Body Corporate, for the Purposes of Taking Care of the Temporalities of Their Respective Corporations." After certain recitals in harmony with its title, that act provided for the incorporation of "religious societies or congregations of christians of whatsoever sect or denomination, which now are or hereafter may be in this State entitled to protection in the free exercise of their religion by the constitution and laws of this State * * *."

*Section* 2 provided that trustees chosen by any religious society or congregation upon taking any name and certifying the same, and recording such certificate in a specified office in "the county in which said societies or congregations shall usually assemble for public worship" might "take, hold, receive and enjoy any real or personal property to and for the use of their respective societies or congregations."

*Section* 7 provided that any estate, right or title, whatsoever, of the said societies or congregations respectively, or which any person or persons, whatsoever, held in trust for them, or for their use, as well in equity as in law, at the

time of the enactment of that Act should "be vested in said corporation in trust, nevertheless, and to and for the use of their societies or congregations."

*Section* 8 gave the trustees "of each respective society or congregation," by the corporate name taken, the power to grant and sell any and all church property "as to them shall seem mete and for the use and benefit of the society or congregation to which they shall respectively belong." The same section, also, provided that "the said trustees of each respective society or congregation," by the name taken, might sue and be sued.

*Section* 9 provided that "the members of the respective societies or congregations might meet from time to time for the election of trustees." Substantially, all of this was pointed out in *Bouchelle, et al., v. Trustees, etc.,* 22 *Del. Ch.* 58, 194 *A.* 100; see, also, *Delaware Land & Devel. Co. v. First and Central Presbyterian Church,* 16 *Del. Ch.* 410, 147 *A.* 165. The latter case, also, referred to an earlier religious act, enacted by our Colonial Assembly in 1744 (*Vol.* 1, *Del. Laws,* 271, *Code of* 1829, *p.* 457), but it seems to have no particular bearing on these cases.

The Eastlake Presbyterian Church was incorporated at a much later date than the Pencader Presbyterian Church (*Chapt.* 39 *Rev. Code of* 1893; *Rev. Code of* 1935, *Chapt.* 68 § 2471, *etc.*); but, as I have already pointed out, it is conceded that the provisions of the act under which it was organized were substantially the same as the original act of 1787. The fair inference from the allegations of the bills is that one of these deeds was made in or about the year 1790, and the other in or about the year 1903.

The Presbyterian Church in the United States of America, the national organization with which these congregations were affiliated, was organized before the enactment of the Act of 1787; and perhaps it might be contended that even if the word "congregations" has a more restricted

meaning, the word "societies" as used in that statute, is broad enough to include the great national organization [*Bouv. Law Dict.*, (*Rawles* 3rd *Rev.*) ; *Cent. Dict.*] ; but in view of *Bouchelle, et al., v. Trustees, etc.*, 22 *Del. Ch.* 58, 194 *A.* 100, it seems unnecessary to consider that question. Conceding, however, if necessary that these words were used in a restricted sense, merely applying to the local religious congregations or societies, the declared purpose of the Act of 1787 was wholly of a temporal nature. That was pointed out in the *Bouchelle case, supra.*

The same restricted purpose is, also, apparent in the subsequent act based thereon, under which the Eastlake Church was incorporated.

The precise question to be determined is whether the congregations and ministers of the particular Presbyterian Churches, congregations which have seceded from The Presbyterian Church in the United States of America, and the ministers of which have been deposed therefrom by bodies having unquestioned authority, have the right to use said churches in connection with a new and different religious organization; and, also, whether any member of that great national Presbyterian Church organization can object to such use, regardless of whether they are members of the local congregations. As we shall hereafter see, from the very nature of the Pencader Presbyterian Church corporation and the Eastlake Presbyterian Church corporation, and the admitted purposes of their organization, and subsequent use, other and broader trusts than are covered by even a strict construction of the religious statutes in this State, and relating to the denominational uses of the churches held by those corporations, must, also, be implied. See *Barkley, et al., v. Hayes, et al.*, (*D. C.*) 208 *F.* 319 ; *Helm v. Zarecor*, 222 *U. S.* 32, 32 *S. Ct.* 10, 56 *L. Ed.* 77 ; *St. Nicholas Ruthenian Greek Catholic Church v. Bilanski, et al.*, 19 *Del. Ch.* 49, 162 *A.* 60 ; *Bouchelle, et al., v. Trustees, etc.*, 22 *Del. Ch.* 58, 194 *A.* 100.

Both of these churches were organized to teach Presbyterian doctrines and tenets; one, more than two hundred and twenty-five years ago, and the other more than thirty-five years ago, and have been continuously used as places of worship, in furtherance of that purpose, until the controversies involved in these actions arose.

The Presbyterian Church in the United States of America was organized before the United States became a nation. That church is, and for generations has been the great national organization of Presbyterians intended to advance and promote the teachings of that religious denomination, with a well defined general church government having superior ecclesiastical tribunals or judicatories, vested with a great measure of general control over the whole church membership in this country.

In *Watson v. Jones,* 13 *Wall.* 679, 714, 20 *L. Ed.* 666, the court aptly said:

"Religious organizations come before us in the same attitude as other voluntary associations for benevolent or charitable purposes, and their rights of property, or of contract, are equally under the protection of the law, and the actions of their members subject to its restraints."

See, also, *Conovaro v. Brothers of Order of Hermits,* 326 *Pa.* 76, 191 *A.* 140; *Kelly v. McIntire,* 123 *N. J. Eq.* 351, 197 *A.* 736; *Ramsey v. Hicks,* 44 *Ind. App.* 490, 87 *N. E.* 1091, 89 *N. E.* 597.

Until a recent date, the congregations and the whole church organization of the Pencader Church and the Eastlake Church have always been members of, and affiliated with The Presbyterian Church in the United States of America. They, therefore, not only subscribed to its religious teachings, but were, also, bound by its rules, regulations, and entire mode of church government, and by the acts of the duly constituted authoritative bodies in administering it according to these rules. In each case, the church property was conveyed to a named Presbyterian Church

corporation. In the deed to the Pencader Church corporation, an express reference was made to the fact that the brick Presbyterian Church at Glasgow, Pencader Hundred, was located on the lot conveyed.

The deed to the Eastlake Church corporation was made by the Presbyterian Alliance, a corporation expressly created to advance Presbyterianism in and around the City of Wilmington.

When a church is conveyed to a local denominational religious corporation, such as a Presbyterian Church corporation, which is merely created to administer the temporal affairs of that particular subsidiary religious organization, and no express trust provisions are inserted in the deed, a trust for the promulgation of the tenets and doctrines of that denomination is ordinarily implied. *Barkley, et al., v. Hayes, et al.,* (D. C.) 108 *F.* 319, affirmed on appeal under the name of *Shepherd v. Barkley,* (8 *Cir.*) 222 *F.* 669; *Ramsey v. Hicks,* 44 *Ind. App.* 490, 87 *N. E.* 1091, 89 *N. E.* 597; *Kniskern v. Lutheran Churches,* 1 *Sandf. Ch.* (*N. Y.*) 439; *Marien v. Evangelical Creed Congregation,* 132 *Wis.* 650, 113 *N. W.* 66, *affirmed* 140 *Wis.* 31, 121 *N. W.* 604; *Smith v. Pedigo,* 145 *Ind.* 361, 33 *N. E.* 777, 44 *N. E.* 363, 19 *L. R. A.* 433, 32 *L. R. A.* 838; see, also, *St. Nicholas Ruthenian Greek Catholic Church v. Bilanski,* 19 *Del. Ch.* 49, 162 *A.* 60; *Bouchelle, et al., v. Trustees, etc.,* 22 *Del. Ch.* 58, 194 *A.* 100. In view of other pertinent and admitted facts, that rule applies, with peculiar force, to these cases, and is not, in any way, inconsistent with the provisions of our religious statutes.

*St. Nicholas Ruthenian Greek Catholic Church v. Bilanski,* 19 *Del. Ch.* 49, 162 *A.* 60, and *Bouchelle, et al., v. Trustees, etc.,* 22 *Del. Ch.* 58, 194 *A.* 100, were based on *Watson v. Jones,* 13 *Wall.* 679, 20 *L. Ed.* 666, which is the leading case in this country relating to religious societies. All of these cases involved divided congregations, and the right of

the secessionists to use the church property, but that fact was a mere detail and did not affect the real principle involved. *Watson v. Jones, supra,* held that when, as in this case, the local religious society or congregation is a member of a larger organization, and is not merely of the congregational type, the grant of the church property is general in its nature, and no express trust provisions are inserted in the deed, so long as any religious congregation can be ascertained to be that congregation, or its regular or legitimate successor, it is entitled to the use of that property. See, also, *Kelly v. McIntire,* 123 *N. J. Eq.* 351, 197 *A.* 736; *Schilstra v. Van Den Heuvel,* 82 *N. J. Eq.* 155, 90 *A.* 1056, 1058. So far as the rights of the defendants are concerned, perhaps the same rule is somewhat more clearly stated in the latter case. The court said:

"That a congregation or inferior ecclesiastical corporation which, by its organization, is connected with and subject to the superior jurisdiction of the church to which it belongs cannot, by the act of the corporation, or a majority, secede from the denomination, declare themselves independent, and take their corporate property with them."

The reasons for this rule are, also, forcefully stated in one of our own cases. *St. Nicholas Ruthenian Greek Catholic Church v. Bilanski,* 19 *Del. Ch.* 49, 162 *A.* 60, 63. The Chancellor said:

"There need be no express dedication of a church property to the worship of God according to the doctrine and faith of a given church in order to affix to it the character which the purpose of its creation and the continued use made of it by its congregation would indicate as its purpose * * *."

As I have already pointed out, both the complainants and the defendants were members of the same congregations. At the end of the above quotation, the Chancellor, therefore, added

"* * * in so far at least as the right is concerned of a faction to take charge of the church and to divert its use to other and different purposes of religious worship."

That this statement had no particular significance is apparent from the subsequent case of *Bouchelle, et al., v. Trustees, etc.,* 22 *Del. Ch.* 58, 194 *A.* 100, *supra.* In that case certain provisions in the church ᴠlease were, in part, relied on to show the intended use of the property in accordance with the Presbyterian faith, as taught by the national organization; but the language used by the court in *St. Nicholas Ruthenian Greek Catholic Church v. Bilanski, supra,* was apparently approved.

The Pencader Church and the Eastlake Church were affiliated with The Presbyterian Church in the United States of America, and the congregations of both of them were members of that organization. In view of the nature of the intended denominational uses of those churches, which are necessarily implied from these and other admitted facts, the rights of the complainants, as members of that great national organization, to file these bills cannot be denied (*Barkley, et al., v. Hayes, et al.,* (*D. C.*) 108 *F.* 319) ; and that is true, whatever rights they may have, acting as the Sessions of these churches, or as the Legal Committee of the Presbytery of New Castle. *Van Dyke, et al., v. Johns,* 1 *Del. Ch.* 93, 12 *Am. Dec.* 76, involved a very different state of facts, and is not inconsistent with any of these conclusions.

*Harper v. Straws,* 14 *B. Mon.* 48, 53 *Ky.* 48, and *First Presbyterian Church of Louisville v. Wilson,* 14 *Bush* 252, .77 *Ky.* 252, seem to support the defendants' contention that, in view of the provisions of the statutes, under which these religious corporations were organized, no trusts or rights of any nature which can be enforced by the members of The Presbyterian Church in the United States of America will be implied; but these cases, apparently, ignore the fundamental nature of a trust for a religious society, which is closely affiliated with a larger demnominational organization. Any such position would seem to be inconsistent with the principles on which *Watson v. Jones, St. Nicholas Ruth-*

*enian Greek Catholic Church v. Bilanski,* and *Bouchelle, et al., v. Trustees, etc., supra,* are based.

The bills are filed by members of the great national Presbyterian Church organization, and the relief prayed for is merely that the defendants be restrained from using the churches in a manner inconsistent with the purposes of their organization, or from interfering with the loyal members of The Presbyterian Church in the United States of America, in their use for purposes of worship according to the doctrines, government and discipline of that church.

Because of the nature of the relief prayed for by the complainants, it is important that the persons, who are in fact the trustees and officers of the Pencader and the Eastlake Church corporations, be made defendants in these actions.

The discovery prayed for in the interrogatories, attached to the complainants' bill, is, therefore, material. *Story's Eq. Pl., (3rd Ed.) Chapt.* 11, §§ 565, 572.

The demurrers to the complainants' bills must be overruled, and orders to that effect will be entered.

Note. For opinion dismissing the bill of complaint after final hearing, see 28 *A.* 2d 157, which was affirmed by the Supreme Court on appeal in an opinion reported 38 *A.* 2d 59, both of which opinions will be reported in subsequent Delaware Chancery Reports.