WILLIAM MARVEL, Receiver of The Riddle Memorial Chapel,

*vs.*

MARY L. SADTLER and TRUSTEES OF THE WILMINGTON ANNUAL CONFERENCE OF THE METHODIST EPISCOPAL CHURCH, a corporation of the State of Delaware.

*New Castle, Feb. 14, 1941.*

*Harold B. Howard,* for complainant, and for Mary L. Sadtler, respondent.

*Clair J. Killoran,* of the firm of Melson & Killoran, for Trustees of Wilmington Annual Conference of the Methodist Episcopal Church, respondent.

THE VICE-CHANCELLOR: By decree of this court, the corporate charter of The Riddle Memorial Chapel, a religious corporation of Delaware, was revoked and forfeited;

and complainant was appointed receiver with the usual powers to accomplish the final settlement of its affairs. With leave of the court, complainant brought this bill of interpleader, joining as respondents the sole claimants of the only property held by the corporation when its charter was revoked. This property is a tract of land in Wilmington on which stands a frame chapel. It was acquired by the corporation by deed of the executor of James Riddle, pursuant to directions and powers contained in his will. Each respondent has answered the bill making claim to the property. The rights of the parties depend essentially upon a construction of Mr. Riddle's will, and particularly upon a determination of the effect of reference by the testator to the church law or discipline of the Methodist Episcopal Church.

The facts are not disputed. The will of James Riddle, who died a resident of Wilmington in 1873, provides among other things, as follows:

"Item Thirteenth: I do order and direct that in the event of my not having deeded to the Methodist Episcopal Church the property known as Riddles Chapel, and the ground enclosed immediately around the same, during my lifetime, and have the Deed therefor duly recorded one year prior to my decease, as is required by the laws of the State of Delaware; that when there shall be a sufficient number of persons belonging to the Methodist Episcopal Church residing in the vicinity of said Riddle's Chapel who are willing to unite and form a Society, sufficient in numbers and in financial ability to support a stationed minister of said Chapel, and signify their willingness to do so, then and at such time my Executors shall deed said Chapel, and the grounds enclosing the same, to the Methodist Episcopal Church, in accordance with the established discipline of said Church."

Mr. Riddle did not convey the property during his life. In 1898, some twenty-five years after his decease, there was incorporated a religious society having the name "The Riddle Memorial Chapel." Shortly thereafter, Mr. Riddle's surviving executor conveyed the land by deed in which named individuals, "Trustees of The Riddle·Memorial Chapel, a corporation of the State of Delaware" were designated

as the grantees. It is agreed by both claimants that this was a conveyance to the corporation. After reciting various matters the deed continues:

"* * * And Whereas, there is now a sufficient number of persons belonging to the Methodist Episcopal Church residing in the vicinity of said Riddle's Chapel who have united and formed a religious society and have become incorporated under the laws of the State of Delaware under the corporate name of 'The Riddle Memorial Chapel' under the discipline and rules of the Methodist Episcopal Church and in accordance with the established discipline of said Church, which society possesses the requirements mentioned in the said thirteenth clause of the said last will and testament of the said James Riddle, deceased, and have signified to the said party of the first part their ability and willingness to comply with the said conditions. * * * And Whereas, it is the wish and desire of the said William M. Field, executor to fully and amply execute and fulfill the directions and intentions of the said James Riddle, deceased, as expressed in the said thirteenth item of his last will and testament. Now therefore * * * William M. Field, executor as aforesaid, for and in consideration of the premises and in execution of the powers conferred upon him under the said last will * * * doth grant, * * * convey and confirm unto the said parties of the second part Trustees of The Riddle Memorial Chapel, their successors and assigns All that certain lot piece or parcel of land together with the Church or Chapel building thereon erected, * * · *."

The *habendum* clause of the deed states the following trusts:

"To have and to hold the said lot of land * * * with the appurtenances unto the said parties of the second part Trustees of The Riddle Memorial Chapel, their successors and assigns, to and for the only proper use and behoof of the said parties of the second part Trustees of The Riddle Memorial Chapel, their successors and assigns forever. In Trust, nevertheless, for the use and benefit of the ministry and membership of the Methodist Episcopal Church in the United States of America subject to the discipline, usage and ministerial appointments of said Church as from time to time authorized and declared, and if sold, the proceeds shall be disposed of and used in accordance with the provisions of said discipline, and in case of sale the purchaser or purchasers not to be required to look to the application, mis-application, or non-application of the purchase money; and in further Trust that the said Trustees and their successors shall at all times permit such ministers belonging to the Methodist Episcopal Church as shall from time to time be duly authorized by the General Conference of the said Methodist Episcopal Church or by the Annual Conference thereof to preach and expound in the house or houses of worship erected or to be erected upon the premises herein

conveyed God's Holy Word and to execute the discipline of the Church and to administer sacraments therein according to the doctrine and discipline of the said Methodist Episcopal Church of the United States of America. * * *"

The deed contains a notation that it was signed and sealed by "the said parties of the second part, Trustees of The Riddle Memorial Chapel, in order to signify their acceptance of this conveyance in full performance of the provisions contained in the thirteenth clause of the said will and testament of the said James Riddle, deceased, * * *." The chapel was used for religious services until about 1924, since which time it has stood idle.

Local churches of the Methodist Episcopal denomination are affiliated with numerous societies and agencies. The internal functioning of the various bodies, as well as their powers, duties and relation to each other are fixed by church law or discipline. Among these organizations are the Annual Conferences, which are unincorporated associations, having religious or charitable purposes, established pursuant to the discipline. Their functions include the exercise of certain authority with respect to local churches within the geographical areas over which the conferences are respectively given jurisdiction. The Riddle Memorial Chapel is within the bounds of the Wilmington Annual Conference. The respondent, Trustees of the Wilmington Annual Conference of the Methodist Episcopal Church, is a Delaware corporation organized in accordance with the discipline for the purpose of securing custody and holding title to property on behalf of the unincorporated association, the Wilmington Annual Conference. For brevity this respondent will be called the church claimant.

This claimant contends that the gift under the will incorporates as a part of its terms the discipline of the church; that the discipline provides that if, as in this situation, church property is abandoned or no longer used for the purposes originally designed, the Annual Conference within the bounds of which the property is located becomes

entitled to the property; and that this claimant is the proper entity to receive and hold land for the use of the Annual Conference.

The other respondent, Mary L. Sadtler, is the sole heir-at-law of the testator, James Riddle. She will be referred to as the heir. Although conceding the validity of the gift under the will and the conveyance by the executor, she now claims the land and abandoned chapel on two grounds. First, she contends that under a proper construction of the will and deed there was a gift of the property to the corporation, The Riddle Memorial Chapel (the charter of which has been forfeited), for its own use; that since the corporation had neither creditors nor members, its realty upon revocation of its charter reverted to her as the sole heir-at-law of the donor. A second and independent ground urged by the heir is that if it be considered that the corporation held the land in trust, there was a failure of the purposes of the trust upon the dissolution of the corporation and, in consequence, a resulting trust in her favor as the heir-at-law.

In support of these contentions, the heir says it was the testator's intent that a particular church to be incorporated after his death should be the beneficiary of his gift; that although he directed a conveyance to the "Methodist Episcopal Church," "he could not have intended to benefit the unincorporated religious denomination known as the Methodist Episcopal Church," but rather that he limited "his beneficence to the persons belonging to that body, residing in the vicinity of the chapel, when they associated themselves and incorporated a new church"; that the dissolved corporation acquired its title to the premises by way of executory devise and that no provision was made for possible failure of the devise under the will of James Riddle; that the reference in the will to the discipline relates solely to the form of the deed, or at most, indicates an intent "that the new corporation should operate under" the laws of the church.

The foregoing contentions do violence to the testator's expressions. The will directs the executors to deed the chapel property "to the Methodist Episcopal Church in accordance with the established discipline of said church." In other portions of the will are found references to numerous church organizations. For example, the testator mentions Stewards of Mount Salem Methodist Episcopal Church, the Wilmington Annual Conference, the Methodist Episcopal Church Extension Society, the Missionary Society of the Methodist Episcopal Church, the Methodist Academy at Dover, the Grace Methodist Episcopal Church, the Asbury Methodist Episcopal Church, St. Paul's Methodist Episcopal Church. In view of the testator's demonstrated familiarity with the organization and agencies of the church, it is proper to conclude that if he had meant to limit the benefits of the gift to a particular corporation, organized or to be organized, he would have said so. The more reasonable construction of the language of the will is that the testator intended that the property should be conveyed to whatever agency the discipline prescribed, and for the purposes directed by the discipline with respect to property acquired for use as a local church.

By his reference to the discipline, the testator adopted its provisions as the terms of his gift as fully as though he had quoted them in his will. *Buhrnson v. Stoner*, 275 *Ill.* 41, 113 *N. E.* 943, *Ann. Cas.* 1918 *D*, 1054; *Kilpatrick v. Graves* 51 *Miss.* 432; *Montgomery v. Carlton*, 99 *Fla.* 152, 126 *So.* 135; *Methodist Society of Georgetown v. Bennett*, 39 *Conn.* 293; *Methodist Episcopal Church v. Roach, Tex. Civ. App.*, 51 *S. W.* 2d 1100; *Heisler v. Methodist Protestant Church of Mapleton*, 166 *Iowa*, 333, 147 *N. W.* 750. In this connection, it should be noted that this court has previously given recognition to the laws and regulations of superior ecclesiastical bodies as affecting the uses to which property of local churches may be put, and who may use the property. *Bouchelle v. Trustees of the P. Congregation*, 22 *Del. Ch.* 58, 194 *A.* 100, 105; *Gibson v. Trustees of Pencader P.*

*Church, etc.,* 24 *Del. Ch.* 270, 10 *A.* 2*d* 332, 338; *St. Nicholas, etc., Church v. Bilanski, et al.,* 19 *Del. Ch.* 49, 162 *A.* 60. Here, the deed of the executor, in carrying out the directions of the will, also provides that the property shall be held in trust "subject to the discipline" of the church. The discipline thus constituted a part of the terms of the gift and must be construed. The following excerpts are relied on by the church claimant:

"Paragraph 358. Property for Church purposes should be acquired and held by an absolute title, in fee simple, if possible. In the case of incorporated Churches, the conveyance should be made directly to the corporation. In other cases, the conveyance should be made to Trustees, heirs, and assigns; or, to Trustees, their successors, and assigns, as the law of the land may require; in either case setting forth the names of the Trustees. Whether conveyed to a corporation, or to trustees, the deed of Conveyance shall contain a trust clause in the following words, or *in words to this effect,* to wit: 'In trust for the use of the A. B. Methodist Episcopal Church (giving the name of the Church acquiring the property, incorporated or unincorporated, as the case may be); subject to the doctrines, law, usages, and ministerial appointments of the Methodist Episcopal Church, as from time to time established, made and declared, by the lawful authority of the said Church; and if the said property shall be sold or encumbered, the proceeds of the sale or encumbrance shall be applied to the use aforesaid; subject, however, to the provisions of the law of the Church relating to abandoned Church property; and of that forbidding the mortgaging of real estate for current expenses.'

"Paragraph 368, Section 1. In all cases where Church property is abandoned, or no longer used for the purpose originally designed, it shall be the duty of the Trustees, if any remain, to sell such property and pay over the proceeds to the Annual Conference within the bounds in which it is located; and where no such lawful Trustees remain, it shall be the duty of said Annual Conference to secure the custody of such Church property by such means as the laws of the Country or State may afford, * * *."

The intent and meaning of the discipline is reasonably clear. The first quoted paragraph in substance directs that property acquired for church purposes shall be held upon stated trusts which include provisions relating to abandoned property. These appear in the second paragraph and purport to provide for the disposal or further holding of property which has ceased to be used as a local church. The

discipline contemplates that in such cases there may or may not be trustees of the church remaining. If any remain, they must sell the property and the Annual Conference becomes entitled to the proceeds. If no trustees remain, the Annual Conference itself must proceed to "secure the custody" of the property by means afforded by the law of the land. In either event, the Annual Conference, being a subsidiary organization of the church, has the function and duty to apply the property, or proceeds of sale, for religious purposes authorized by the discipline.

The heir insists that neither the church claimant nor the Wilmington Annual Conference can take any interest in the property because neither is a corporation organized under the statutes relating to religious societies. She cites 11 *Laws of Delaware* (1855), *Chap.* 275, *Sec.* 2, which reads thus:

"That no grant, conveyance, devise or lease of any real estate, dedicated or appropriated, or intended to be dedicated or appropriated to purposes of religious worship for the use of any congregation or society shall vest any right, title or interest in any person or persons to whom such grant, conveyance, devise or lease be made unless such grant, conveyance, devise or lease shall be made both in form and in fact, to a corporation organized according to the provisions of the laws of this State, as contained and provided in, and by, the 39th chapter of the Revised Code, under the title of 'Religious Societies'."

As stated before, the heir has conceded that the deed of Mr. Riddle's executor was a conveyance of the real estate to a corporation of the character mentioned in the statute. So long as the land was "dedicated or appropriated to purposes of religious worship," which was a period of thirty-eight years, it was held by that corporation. Manifestly, the statute does not require that property be held by such a corporation where the property ceases to be used as a place for religious worship, and is appropriated to other religious or charitable purposes.

My conclusions are that the gift of the land was for religious purposes which have not failed; and that the church claimant, being a lawful corporation and an agency of the church created pursuant to the discipline to hold such property, is entitled to it.

A decree accordingly will be advised.