WILLIAM GIBSON, HARRY J. ROTHROCK and FRANK H. LONG, acting as the Session of the TRUSTEES OF PENCADER PRESBYTERIAN CHURCH IN PENCADER HUNDRED, and CHARLES L. CANDEE, WILLARD G. PURDY, JOHN H. DARLING and DONALD C. MACLEOD, acting as the Legal Committee of the Presbytery of New Castle of The Presbyterian Church in the United States of America, duly authorized by the said Presbytery, and individually as members of The Presbyterian Church in the United States of America,

*vs.*

TRUSTEES OF PENCADER PRESBYTERIAN CHURCH IN PENCADER HUNDRED, HENRY G. WELBON, THOMAS A. BROWN, ALLEN P. BROWN, WILLIAM C. BROOKS, JAMES LESLIE FORD and GEORGE C. BROWN.

*New Castle, May* 14, 1941.

318

Caleb S. Layton, of Richards, Layton & Finger, for complainants.

Edward W. Cooch, for defendants.

THE CHANCELLOR: This case is before the court on final hearing, and involves the rights of the defendants to use the Pencader Presbyterian Church, at Glasgow, New Castle County, Delaware, for certain religious purposes of a sectarian nature.

The complainants are loyal members of "The Presbyterian Church in the United States of America," the great national organization of that religious denomination in this country, the real purpose of which is to promote and teach Presbyterian doctrines and tenets. But they are not members of the congregation of the Pencader Church. Moreover, all Presbyterian ministers and all members of local churches are also members of the national organization, and are, therefore, bound by its rules and regulations, and by the religious doctrines for which it stands. "The Presbyterian Church in the United States of America" is a well defined organization, governed by various judicatories, set up by its constitution and rules, and headed by the General Assembly. The Synods, Presbyteries, Church Sessions and Congregations are subordinate bodies in its organization, all having certain well defined functions, but necessarily of a limited scope. Perhaps the details of this organization are more

specifically set out in *Gibson, et al., v. Trustees of Pencader Presbyterian Church,* 24 *Del. Ch.* 270, 10 *A. 2d* 332.

Henry G. Welbon, one of the defendants, was formerly a duly ordained minister of the Presbyterian Church in the United States of America, in charge of the Pencader Presbyterian Church, but severed his connection with the national organization and with the Presbytery of New Castle, one of its subordinate judicatories, to which the Pencader Church was directly affiliated, in 1936. He was a believer in the religious doctrines primarily advocated by the Rev. J. Gresham Machen, and, after his resignation from the old national Presbyterian Church, became a member of "The Presbyterian Church of America," a religious organization which had been formed by the Rev. Mr. Machen and his associates some time prior to Mr. Welbon's resignation. This organization is called a Presbyterian Church, but it has no connection, whatever, with "The Presbyterian Church in the United States of America," and was created to teach somewhat different religious doctrines.

When Mr. Welbon resigned from the Presbyterian Church in the United States of America, and the Presbytery of New Castle, charges of heresy were pending against him because his announced views were not in accord with the established Presbyterian doctrines and teachings, and the rules and regulations of that organization. The details of the dispute causing the formation of the new Presbyterian Church organization and the action taken by Mr. Welbon are not important, though the question of Modernism and the so-called "Auburn Affirmation" were involved.

Mr. Welbon and his associates, including the defendants, claim that they are advocates of the true faith, and that the old national church has strayed from the Presbyterial path. Moreover, they point out that some of the complainants signed the Auburn Affirmation of faith. But whatever their individual belief may have been at that time, it does not appear that that document was ever approved by

any official action of the Presbyterian Church in the United States of America. Nor will courts ordinarily consider which of two contending groups represents the true faith; in most cases that is for the superior judicatory of the organization, with which the local church is associated, to determine. *Bouchelle v. Trustees, etc.,* 22 *Del. Ch.* 58, 194 *A.* 100; *Watson v. Jones,* 13 *Wall.* 679, 20 *L. Ed.* 666; 2 *Bouv. Law Dict.,* (*Rawles 3rd Rev.*), 2868. In other words, when property has been acquired by a society "which constitutes a subordinate part of a general religious organization, with established tribunals for ecclesiastical government, these tribunals must decide all questions of faith, discipline or ecclesiastical government." 2 *Bouv. Law Dict., supra.*

The congregation of the Pencader Church never actually joined the Presbyterian Church of America, but its members unanimously voted to sever their connection with the old national Presbyterian Church, and declared that they were no longer associated with that organization, or with the Presbytery of New Castle. That action was apparently taken under the leadership of Mr. Welbon. Though he is no longer a minister, or even a member of the Presbyterian Church in the United States of America, he has continued to act as the minister of the Pencader Presbyterian Church; and, together with the trustees of that church and its congregation, has continued to use it for religious purposes, apparently in association with the Presbyterian Church of America. The complainants deny the defendants' right to do this, and seek to prevent them from so doing by injunctive process.

The bill alleges that the Presbyterian Church in the United States of America was organized before the United States became a separate nation, but the facts show that it was organized in 1788. That, however, is of no real importance. The Pencader Presbyterian Church was organized at a much earlier date, probably as early as 1710, and possibly even as early as 1706. There may have been one or more

short periods of time since 1788 when the Pencader Church and its members refused to co-operate with the national Presbyterian Church, with which they had been long associated; but, certainly for a greater part of the time since that church was organized, the local church has been associated with it and has been governed in all respects by its constitution, rules and regulations, and has taught its tenets and doctrines. That was certainly true for many years prior to 1936, and whether any compulsory action, with respect to the use of the Pencader Church by secessionists, was ever attempted by the national organization at any prior time is of no real importance. Moreover, the affiliation of the Pencader Church with a broader Presbyterian Church organization started at a much earlier date than 1788. Available records show that its elders attended meetings of the Presbytery of Philadelphia, which was organized in or prior to 1715. The Presbytery of New Castle was, however, organized in or about 1717, and for a greater part of the time thereafter the Pencader Church has been directly associated with that Presbytery, and its elders have attended its meetings. It seems that a Synod of the Presbyterian Church has always been composed of several Presbyteries, and it appears that the Synod of Philadelphia was organized as early as 1718. The Pencader Presbyterian Church was unquestionably represented at those meetings in 1718 and 1719. The fair inference is that all of these smaller organizations were followed by and incorporated in the Presbyterian Church in the United States of America when it was organized in 1788.

There seem to have been three Pencader Church buildings since the organization of that congregation. Two of them were probably located, in turn, on the land described in the deed of William Davids and David Evans to William Williams, et al., dated June 19th, 1721. The same land, also, seems to have been described in the deed of Margaret Williams, Relict and Executrix, and Thomas Williams, Son and Executor of Roger Williams, to David Howell, et al., dated

November 2nd, 1742. But the evidence tends to show that the present church building is erected on the adjoining parcel of land which was conveyed by Margaret Williams, Widow and Executrix of Rogers Williams, to Timothy Griffith and others, the "Minister & Elders of the Presbyterian Congregation at Pencader," and acknowledged by the grantor at the May Term of Court in 1746. This conclusion is not disputed either by the defendants' amended pleadings or their proof. Whether, therefore, the provisions contained in the deed of November 2nd, 1742, quoted in the statement of facts, was a trust, in any way affecting the rights of the parties, or a mere conditional limitation, need not be considered.

The "Trustees of Pencader Presbyterian Church in Pencader Hundred" was not organized as a religious corporation until about 1790. The certificate of incorporation was executed October 24th, 1789, and was duly recorded March 2nd, 1790. That action was taken pursuant to the provisions of *Chapter 144b, Volume 2, Laws of Delaware,* which was enacted in 1787. The same act appears in the *Revised Code of* 1829, *at page* 459.

The precise question in dispute is whether any rights of the complainants as members of the Presbyterian Church in the United States of America, are being violated by the defendants in their use of the Pencader Presbyterian Church to promote the religious beliefs of the Presbyterian Church of America. The same question, on substantially the same material facts, was determined by this court in favor of the complainants at an earlier stage of this case, in overruling the defendants' demurrer to the bill. *Gibson, et al., v. Trustees of Pencader Presbyterian Church,* 24 *Del. Ch.* 270, 10 *A.* 2d 332. That decision, and the reasoning on which it was based, will be adhered to, and is controlling.

Perhaps the fair inference is that the persons named as grantees in the deed executed by Margaret Williams, et al., in 1746, and who were described as the "Minister & Elders

of the Presbyterian Congregation at Pencader," merely took title as trustees for that congregation. See *Delaware Land & Develop. Co. v. First and Central, etc., Church*, 16 *Del. Ch.* 410, 147 *A*. 165; *Scott on Trusts*, § 119.

Under the Act of 1787, any estate, right, title or interest held by the Pencader Congregation in the church property immediately vested in the "Trustees of Pencader Presbyterian Church in Pencader Hundred," when that religious corporation was organized in or about 1790. Any such title was held "in trust, nevertheless, and to and for the use of" the society or congregation; but that does not determine this case in favor of the defendants. As was pointed out in the opinion previously filed, this court has held that the Act of 1787 merely related to temporal matters; and the title of the Act shows that intent. *Gibson, et al., v. Trustees of Pencader Presbyterian Church*, 24 *Del. Ch.* 270, 10 *A*. 2d 332; *Bouchelle v. Trustees, etc.*, 22 *Del. Ch.* 58, 194 *A*. 100; see, also, *Hardin v. Baptist Church*, 51 *Mich.* 137, 16 *N. W.* 311, 47 *Am. Rep.* 555; 2 *Bouv. Law Dict.* (*Rawles 3rd Rev.*), 2867. The only possible reference to religious or denominational matters appears in that part of the Act providing for the incorporation of religious societies or congregations consisting of a specified number of families "statedly assembling at one place of worship." In that connection, it contains the limiting provision "and being supporters of the gospel of the said society or congregation." The defendants must concede that if there had been a divided congregation, and any of the church members had adhered to the old national church, the Pencader Church could not be used to promote and teach any other religious beliefs, if they objected to that use. *St. Nicholas, etc., Church v. Bilanski*, 19 *Del. Ch.* 49, 162 *A*. 60; *Bouchelle v. Trustees, etc.*, 22 *Del. Ch.* 58, 194 *A*. 100. The defendants, therefore, necessarily admit that trusts of a religious nature, and pertaining to the use of that church, were implied for the benefit of the Pencader Congregation, though no such provisions were expressly incorporated in the Act of 1787. That admission was neces-

sarily based on the theory that that congregation and the present and prior churches were built in order to promote and teach the Presbyterian religion. They deny, however, that any such trusts can be implied for the benefit of the complainants who are members of the old national Presbyterian Church, of which the Pencader Church and its congregation were subordinate members for many years prior to 1936. I find no logic in the attempted distinction. The difference in facts is merely one of degree and does not affect the principle involved.

The Articles of Faith embodied in the Presbyterian religion were agreed on and established by the proper judicatory of the national organization, with the express or implied consent of the members of the Pencader Church, and for many years it has been dedicated to those religious uses, and the defendants are now using that church to teach other and different beliefs. It seems difficult to escape the conclusion that trusts, with respect to such uses, were implied and can be enforced by the complainants who are members of the national Presbyterian organization, though not of the local congregation. See *Watson v. Jones, 13 Wall.* 679, 20 *L. Ed.* 666.

In *St. Nicholas, etc., Church v. Bilanski,* 19 *Del. Ch.* 49, 56, 162 *A.* 60, 63, Chancellor Wolcott pointed out that:

"There need be no express dedication of a church property to the worship of God according to the doctrine and faith of a given church in order to affix to it the character which the purpose of its creation and the continued use made of it by its congregation would indicate as its purpose."

He then added:

"In so far at least as the right is concerned of a faction to take charge of the church and divert its use to other and different purposes of religious worship."

See, also, *Bouchelle v. Trustees, etc.,* 22 *Del. Ch.* 58, 194 *A.* 100.

Both of those cases involved divided congregations, and that statement was, therefore, pertinent, but its does not apply here.

A decree will, therefore, be entered for the complainants in accordance with the prayers of their bill.